## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
                                    :
In re                               :    Chapter 11
                                    :
ALPHA ENTERTAINMENT LLC,            :    Case No. 20-10940 (LSS)
                                    :
          Debtor.[1]                :
                                    :
-----------------------------------------------------------x

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM; (II) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS AND CERTAIN PAYMENT METHODS; (III) SUSPENDING THE REQUIREMENTS OF 11 U.S.C. § 345(b) ON AN INTERIM BASIS; AND (IV) GRANTING RELATED RELIEF

The debtor and debtor in possession in the above-captioned case (the "**Debtor**") hereby submits this motion (this "**Motion**"), for entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**"), substantially in the forms annexed hereto as Exhibit A and Exhibit B, respectively, pursuant to sections 105, 345, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing the Debtor's continued use of the Cash Management System; (ii) authorizing the Debtor to continue using prepetition bank accounts, making check, debit, wire, and ACH payments, and, in its discretion, allowing the Payment Processors (defined below) to process customer payments and to deduct any chargebacks, returns and processing fees in the ordinary course of business and consistent with past practice; (iii) suspending the requirements of section 345(b) of the Bankruptcy Code on an interim basis; and

---

[1] The last four digits of the Debtor's federal tax identification number are 7778.  The Debtor's mailing address is 1266 East Main St., Stamford, CT 06902.

(iv) granting related relief.  In support of this Motion, the Debtor relies on the *Declaration of Jeffrey N. Pollack in Support of Chapter 11 Petition and First-Day Pleadings* (the "**First Day Declaration**"),[2] which was filed contemporaneously with this Motion and is incorporated herein by reference.  In further support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtor consents, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory and legal predicates for the relief requested herein are sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

## BACKGROUND

### A.    General Background

3.     On the date hereof (the "**Petition Date**"), the Debtor commenced this bankruptcy case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Code.  No official committees have been appointed in the Chapter 11 Case and no request has been made for the appointment of a trustee or examiner.

4.      Additional factual background relating to the Debtor's business, capital structure, and the commencement of the Chapter 11 Case is set forth in further detail in the First Day Declaration.

**B.      The Debtor's Cash Management System**

5.      In the ordinary course of its business, the Debtor maintains a relatively straightforward, integrated cash management system (the "***Cash Management System***"), which allows it to efficiently identify its cash requirements and manage its cash as needed.  The Cash Management System is managed by World Wrestling Entertainment, Inc. ("***WWE***") pursuant to a consulting and support services agreement between the Debtor and WWE assists the Debtor in connection with the administration and implementation of its Cash Management System in the ordinary course of business.  The Cash Management System and the services provided by WWE in connection therewith are essential to the operation and functionality of the Debtor's finance and accounting operations and, therefore, to maximizing the value of its estate in the Chapter 11 Case.

6.      The Cash Management System consists of four (4) bank accounts (collectively, the "***Bank Accounts***"), at JP Morgan Chase ("***JPM***" and, collectively with any banks or financial institutions that may in the future participate in the Cash Management System, the "***Banks***"), which are listed in the schedule attached hereto as Exhibit C.  Cash collections from the Debtor's operations are deposited directly into a concentration account (the "***Concentration Account***").  A disbursement account (the "***Main Disbursement Account***") is auto-funded from the Concentration Account on a daily basis to cover check, debit, wire or ACH payments that have

3

been issued for the Debtor's operating expenses, including payroll and other employee related expenses, rent, and vendor obligations.[3]   On each business day, sufficient funds are made available in the Main Disbursement Account to cover all items drawn on such account, whether outstanding or presented for payment, and any other transactions initiated with respect to the Main Disbursement Account.  Disbursements from the Main Disbursement Account are made directly to third parties.

### C.      Credit Card and Other Payment Processors

7.      In addition to cash, the Debtor accepts several other methods of payment from customers at the point of sale, including at the XFL Shop accessible through the company's official website, including credit cards, PayPal, debit cards, and personal checks.   For all methods of payment (other than a cash transaction), the Debtor receives the net customer sales less any chargebacks, returns and processing fees charged by the credit card companies, internet vendors, or other third-party payment processors (the "***Payment Processors***").  The processing fees charged by each Payment Processor varies, but are in the range of 1% to 4%.  The fees that are owing to the Payment Processors are set off from the funds that are remitted to the Debtor on a daily basis.

<u>**RELIEF REQUESTED**</u>

8.      The Debtor hereby requests entry of the Interim Order and Final Order, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, (i) authorizing the Debtor's continued use of the Cash Management System; (ii) authorizing the Debtor to continue using prepetition bank accounts, making check, debit, wire, and ACH payments, and, in its discretion, allowing the Payment Processors to process

---

[3] The Debtor maintains three additional accounts with JPM, one in connection with certain employee benefits (flexible spending accounts), one disbursement account for other employee-related obligations, and one collateral account for certain letters of credit.

customer payments and to deduct any chargebacks, returns and processing fees in the ordinary

course of business and consistent with past practice; (iii) suspending the requirements of section

345(b) of the Bankruptcy Code on an interim basis; and (iv) granting related relief.

## BASIS FOR RELIEF REQUESTED

A. **Maintaining the Cash Management System is Important to the Debtor's Operations and Chapter 11 Efforts**

9.     The maintenance of the Cash Management System will help to minimize the

disruption of the Chapter 11 Case, thereby preserving and maximizing the value of the Debtor's

assets for the benefit of all stakeholders.

10.     The Debtor's request for authorization to continue to use the Cash Management

System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in

possession to "use property of the estate in the ordinary course of business, without notice or a

hearing." 11 U.S.C. § 363(c)(1).  Section 363(c)(1) is intended to provide a debtor in possession

with the flexibility to engage in the ordinary transactions required to operate its business.  *See,

e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *see also In re Nellson Nutraceutical,

Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007).  Included within the purview of section 363(c) is

a debtor's ability to continue the routine transactions necessitated by its cash management

system.  *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447,

1453 (10th Cir. 1996).  Nevertheless, the Debtor seeks the relief requested herein out of an

abundance of caution, to the extent that any aspect of the Cash Management System could be

considered as outside the ordinary course of business for purposes of section 363(c).

11.     Courts in this and other districts have noted that an integrated cash management

system "allows efficient utilization of cash resources and recognizes the impracticalities of

maintaining separate cash accounts for the many different purposes that require cash."  *In re

*Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *rev'd on other grounds*, 997 F.2d 1039 (3d Cir. 1993); *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").  The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient."  *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993).  For these reasons, the Debtor should be permitted to continue to use of the Cash Management System postpetition in the ordinary course.

12.    The Debtor will maintain records of all transfers within the Cash Management System to the same extent they were recorded before the commencement of the Chapter 11 Case. As a result, the Debtor will be able to document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest.

**B.    The Court Should Authorize the Debtor to Maintain Existing Bank Accounts and Continue to Use its Existing Business Forms**

13.    The U.S. Trustee has set forth certain operating and reporting requirements for chapter 11 cases (the "***U.S. Trustee Guidelines***") that require debtors in possession to, among other things: (i) establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (ii) close all existing bank accounts and open new debtor in possession accounts; (iii) maintain a separate debtor in possession account for cash collateral; and (iv) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and to help protect against the inadvertent payment of prepetition claims.

6

14.     Enforcement of the U.S. Trustee Guidelines during the Chapter 11 Case would disrupt the Debtor's ordinary course financial operations.  Accordingly, the Debtor respectfully requests that the Court allow it to operate each of the Bank Accounts as they were maintained in the ordinary course of business before the Petition Date.

15.     In addition, the Debtor has concurrently filed several motions seeking authorization to pay prepetition obligations in the ordinary course of business.  If the Debtor were required to open new accounts, it would likely be unable to timely implement the critical relief sought in those motions.  The Debtor has the ability to monitor disbursements from the Bank Accounts to ensure that only those prepetition obligations expressly approved by the Court are paid.  Similarly, allowing the Debtor's to continue using the Payment Processors in the ordinary course of business will ensure that the Debtor's customers can purchase the Debtor's merchandise in the ordinary course, which will benefit the Debtor's estate and stakeholders.

16.     In the ordinary course of its business, the Debtor uses a variety of checks and business forms.  To avoid disruption of the Cash Management System and unnecessary expense, the Debtor requests that it be authorized to continue to use its existing check stock, correspondence, and other business forms (collectively, the "***Business Forms***") as such forms were in existence immediately before the Petition Date, without reference to the Debtor's status as debtor in possession.  Pursuant to Local Rule 2015-2, in the event the Debtor needs to purchase new check stock during the pendency of the Chapter 11 Case, such check stock will include a legend referring to the Debtor as "Debtor in Possession" or "DIP" and the case number. In addition, within fifteen (15) days of the entry of the Interim Order, the Debtor will cause any electronically produced checks to reflect "Debtor in Possession" or "DIP" and the case number.

17.     The Debtor submits that parties in interest will not be prejudiced if the Debtor is authorized to continue to use its existing Business Forms.  The Debtor will be sending a notice of commencement of the Chapter 11 Case to all creditors.  Most parties doing business with the Debtor undoubtedly will be aware of its status as debtor in possession; thus, changing Business Forms immediately is unnecessary and unduly burdensome.

**C.      The Court Should Authorize the Banks to Continue to Maintain, Service, and Administer the Debtor's Bank Accounts in the Ordinary Course of Business**

18.     The Debtor respectfully requests that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of a debtor in possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH payments, and other instructions, and drafts payable through, drawn, or directed on the Bank Accounts after the Petition Date.

19.     The Debtor further requests that the Court authorize the Banks to accept and honor all representations from the Debtor as to which checks, drafts, wires, or ACH payments should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH payments are dated before or after the Petition Date. The Debtor can and will identify all prepetition checks and other forms of payment outstanding on the Petition Date and notify the Banks which checks or obligations should be honored, as authorized by the Court.  The Debtor also requests that, to the extent any Bank honors a prepetition check or other item drawn on any account:  (i) at the direction of the Debtor; (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite the above-described protective measures, such Bank shall not be deemed to be liable to the Debtor or its estate on account of such

prepetition check or other item honored postpetition.  The Debtor respectfully submits that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

20.     The Debtor further requests that the Banks be authorized to (i) honor the Debtor's directions with respect to the opening and closing of any Bank Account; and (ii) accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions; *provided*, in each case that the Banks shall not have any liability to any party for relying on such representations.

21.     Moreover, the Debtor requests that the Court authorize (i) the Banks to charge, and the Debtor to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtor; and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on or subsequent to the Petition Date, in the ordinary course.

**D.    Cause Exists for Suspending the Deposit and Investment Guidelines Under Section 345 of the Bankruptcy Code on an Interim Basis**

22.     The Debtor requests that the Court suspend the requirements of section 345(b) of the Bankruptcy Code on an interim basis and permit the Debtor to maintain its deposits in its accounts in accordance with its existing deposit practices, until such time as the Debtor obtains Court approval to deviate from the guidelines imposed under section 345(b) of the Bankruptcy Code on a final basis, to the extent necessary.

23.     Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."   11

U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety. 11 U.S.C. § 345(b).

24.     However, a court may relieve a debtor-in-possession of the restrictions imposed by section 345(b) of the Bankruptcy Code for "cause." 11 U.S.C. § 345(b). Local Rule 2015-2(b) provides that if a motion for a waiver of the restrictions imposed by section 345(b) "is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the debtor's motion can be held." Del. Bankr. L.R. 2015-2(b). As this Motion is being filed on the Petition Date and the Debtor has in excess of 200 creditors, the Debtor requests that the Court enter an order suspending, on an interim basis, for a period of thirty (30) days from the Petition Date, the requirements of section 345(b) of the Bankruptcy Code.

25.     The Debtor believes that it is in substantial compliance with the requirements of section 345(b) of the Bankruptcy Code because JPM is a U.S. Trustee-approved depository institution. Nevertheless, out of an abundance of caution, the Debtor requests an interim suspension of the requirements of section 345(b) of the Bankruptcy Code to the extent such requirements are inconsistent with the Debtor's current practices. Given the relative security of the Cash Management System and that the Debtor is likely compliant, the Debtor submits that cause exists to grant an interim suspension of the requirements of section 345(b) in the manner requested herein.

## IMMEDIATE RELIEF IS NECESSARY

26.    Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  The Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

## WAIVER OF ANY APPLICABLE STAY

27.    The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to maintain its operations without interruption and to preserve value for its estate through the Chapter 11 Case.  Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

28.    Nothing in the Interim Order, the Final Order, or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor and its estate, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to the validity, priority, or amount of any claim against the Debtor and its estate, (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to any and all claims or causes of action against any party in interest, or (iv) shall be construed as a promise to pay a claim.

## NOTICE

29.     Notice of this Motion has been given to (i) the U.S. Trustee; (ii) counsel to the Debtor's prepetition and postpetition lender (iii) holders of the twenty-five (25) largest unsecured claims against the Debtor; (iv) the Banks; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of the Interim Order and Final Order, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, (i) granting the relief requested herein, and (ii) granting such other relief as is just and proper.

Dated:     April 13, 2020                          YOUNG CONAWAY STARGATT & TAYLOR, LLP
           Wilmington, Delaware

                                                   */s/ Shane M. Reil*
                                                   Michael R. Nestor (No. 3526) (mnestor@ycst.com)
                                                   Matthew B. Lunn (No. 4119) (mlunn@ycst.com)
                                                   Kenneth J. Enos (No. 4544) (kenos@ycst.com)
                                                   Travis G. Buchanan (No. 5595) (tbuchanan@ycst.com)
                                                   Shane M. Reil (No. 6195) (sreil@ycst.com)
                                                   Matthew P. Milana (No. 6681) (mmilana@ycst.com)
                                                   1000 N. King Street
                                                   Rodney Square
                                                   Wilmington, Delaware 19801
                                                   Telephone:  (302) 571-6600
                                                   Facsimile:  (302) 571-1253


                                                   *Proposed Counsel to the Debtor and Debtor in Possession*

## EXHIBIT A

**Proposed Interim Order**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : Case No. 20-10940 (LSS) |
| **ALPHA ENTERTAINMENT LLC,** | : |
|  | : |
| Debtor.[1] | : Ref. Docket No. ____ |

-----------------------------------------------------------x

### INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM; (II) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS AND CERTAIN PAYMENT METHODS; (III) SUSPENDING THE REQUIREMENTS OF 11 U.S.C. § 345(b) ON AN INTERIM BASIS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtor for entry of interim and final orders, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, (i) authorizing the Debtor's continued use of the Cash Management System; (ii) authorizing the Debtor to continue using prepetition bank accounts, making check, debit, wire, and ACH payments, and, in its discretion, allowing the Payment Processors to process customer payments and to deduct any chargebacks, returns and processing fees in the ordinary course of business and consistent with past practice; (iii) suspending the requirements of section 345(b) of the Bankruptcy Code on an interim basis; and (v) granting related relief; and upon consideration of the First Day Declaration; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that this is a core matter pursuant to 28 U.S.C. § 157(b)(2) and this Court having determined that it may enter a final order consistent with

---

[1]  The last four digits of the Debtor's federal tax identification number are 7778.  The Debtor's mailing address is 1266 East Main St., Stamford, CT 06902.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Article III of the United States Constitution; and it appearing that venue of the Chapter 11 Case and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      Objections to entry of an order granting the Motion on a final basis must be filed by _____, 2020 at 4:00 p.m. (ET) and served on: (i) proposed counsel to the Debtor, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Matthew B. Lunn, Esq. (mlunn@ycst.com), Kenneth J. Enos, Esq. (kenos@ycst.com), and Shane M. Reil, Esq. (sreil@ycst.com); (ii) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Richard Schepacarter (richard.schepacarter@usdoj.gov); (iii) counsel to the Debtor's prepetition and postpetition lender, K&L Gates, LLP, 599 Lexington Avenue, New York, NY 10022, Attn: John A. Bicks (john.bicks@klgates.com), James A. Wright III (james.wright@klgates.com), and Aaron S. Rothman (aaron.rothman@klgates.com); and (iv) counsel to any statutory committee appointed in the Chapter 11 Case.  A final hearing, if required, on the Motion will be held on _____, 2020 at _____.m. (ET).  If no objections are filed to the Motion, this Court may enter a final order without further notice or hearing.

3.      The Debtor is authorized, in its sole discretion, to: (i) continue operating the Cash Management System and honor any prepetition obligations related thereto; (ii) maintain existing

Bank Accounts and Business Forms; (iii) maintain the ability to use debit, wire and ACH payments; and (iv) continue to deposit and invest funds in accordance with its current practices to the extent set forth herein.

4.      The Debtor is further authorized, in its sole discretion, to: (i) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those accounts identified on Exhibit C to the Motion; (ii) use, in their present form, all Business Forms, without reference to the Debtor's status as debtor in possession; (iii) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession; (iv) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH payments, and other debits; and (v) pay any ordinary course prepetition or postpetition fees incurred in connection with the Bank Accounts and to otherwise perform its obligations under the documents governing the Bank Accounts.

5.      The Banks are authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts in accordance with prepetition practices as accounts of debtor in possession, without interruption and in the ordinary course of business.  In this regard, the Banks are authorized, but not directed, to receive, process, honor and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn or directed on the Bank Accounts by holders, makers or other parties entitled to issue instructions with respect thereto on account of any claim arising (i) on or after the Petition Date or (ii) prior to the Petition Date and otherwise authorized by this Court.

6.      In the course of providing cash management services to the Debtor, the Banks, without further order of this Court, are authorized, but not directed, to (i) charge, and the Debtor is authorized to pay or honor, both prepetition and postpetition service and other fees, costs,

charges and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtor, and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on or subsequent to the Petition Date, in the ordinary course.

7.     The Debtor and the Banks are hereby authorized, but not directed, to continue to perform pursuant to the terms of any unexpired prepetition cash management agreements that may exist between them, except and to the extent otherwise directed by the terms of this Interim Order and except as amended, modified, or supplemented by agreement between the Debtor and the Banks in the ordinary course of business.

8.     Notwithstanding any other provision of this Interim Order, the Banks are authorized, but not directed, to rely on the representations of the Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to any order of this Court. To the extent that any Bank honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (i) at the direction of the Debtor, (ii) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, such Bank shall neither be deemed to be in violation of this Interim Order nor be liable to the Debtor, its estate, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

9.     The Banks are further authorized, but not directed, to accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions; *provided*, in each case, that the Banks shall not have any liability to any party for relying on such representations.

10.     For those Banks at which the Debtor holds Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Interim Order, the Debtor shall (i) contact each Bank; (ii) provide such Bank with the Debtor's employer identification number; and (iii) identify each of the Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case and provide the bankruptcy case number.

11.     For any Bank at which the Debtor holds accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall have thirty (30) days to comply with section 345 of the Bankruptcy Code unless further extended by agreement of the U.S. Trustee or order of this Court, and the Debtor shall use its good-faith efforts to cause any such Bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Interim Order.

12.     The Debtor is authorized to use its existing Business Forms; *provided*, *however*, that once the Debtor's existing checks have been used, the Debtor shall, when reordering checks, require the designation "Debtor in Possession" or "DIP" and the corresponding bankruptcy case number on all checks; *provided*, *further*, within fifteen (15) days of entry of this Interim Order, any electronically produced checks shall reflect the designation "Debtor in Possession" or "DIP" and the bankruptcy case number.

13.     The Banks are authorized, but not directed, to debit the Debtor's accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Banks' receipt of notice of filing of the Chapter 11 Case; (ii) all checks, automated clearing house entries, and

other items deposited or credited to one of Debtor's accounts with such Bank prior to filing of the Chapter 11 Case which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to filing of the Chapter 11 Case; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

14.     Nothing contained herein shall prevent the Debtor from closing any Bank Account(s) or opening any additional bank accounts, as it may deem necessary and appropriate, and the Banks are authorized, but not directed, to honor the Debtor's requests and to close or open such Bank Accounts or additional bank accounts, as the case may be; *provided* that notice of the opening or closure of any account shall be given to the U.S. Trustee and counsel to any statutory committee within fifteen (15) days; *provided*, *further*, that any new bank accounts shall be opened at a bank that is party to a Uniform Depository Agreement with the U.S. Trustee, or at a bank that is willing to immediately execute a Uniform Depository Agreement.

15.     The Payment Processors used by the Debtor are authorized to offset chargebacks, returns, and fees on account of customer purchases that may have arisen before the Petition Date in the ordinary course of business and in a manner consistent with past practice.

16.     For any PayPal account maintained by the Debtor, the Debtor shall use reasonable good faith efforts to ensure that the daily balance in the account does not exceed $30,000. The Debtor shall provide to the U.S. Trustee, on a bi-weekly basis, statements showing the daily balances in any PayPal accounts.

17.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Interim Order (i) is intended or shall be deemed to

constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor and its estate, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to the validity, priority, or amount of any claim against the Debtor and its estate, (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to any and all claims or causes of action against any party in interest, or (iv) shall be construed as a promise to pay a claim.

18.     The Debtor is authorized to continue engaging in intercompany transactions in the ordinary course of business; *provided, however*, that there shall be no intercompany loans from or to the Debtor absent further order of the Court.

19.     The Debtor shall maintain accurate and detailed records of all transfers, including intercompany transfers, so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and postpetition transactions.

20.     The requirements provided in 11 U.S.C. § 345(b) are hereby suspended for an interim period of thirty (30) days, without prejudice to the Debtor's right to seek a further period of suspension of such requirements.

21.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor.  The requirements of Bankruptcy Rule 6004(a) are waived under the circumstances.

22.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Interim Order shall be effective immediately and enforceable upon its entry.

23.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

24.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Interim Order.

Dated: _____, 2020
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x

In re

ALPHA ENTERTAINMENT LLC,

Debtor.[1]

---------------------------------------------------------x

: **Chapter 11**
:
: **Case No. 20-10940 (LSS)**
:
:
:
: **Ref. Docket Nos. ___ & ____**

### FINAL ORDER (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM; (II) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS AND CERTAIN PAYMENT METHODS; (III) SUSPENDING THE REQUIREMENTS OF 11 U.S.C. § 345(b) ON AN INTERIM BASIS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtor for entry of interim and final orders, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, (i) authorizing the Debtor's continued use of the Cash Management System; (ii) authorizing the Debtor to continue using prepetition bank accounts, making check, debit, wire, and ACH payments, and, in its discretion, allowing the Payment Processors to process customer payments and to deduct any chargebacks, returns and processing fees in the ordinary course of business and consistent with past practice; (iii) suspending the requirements of section 345(b) of the Bankruptcy Code on an interim basis; and (iv) granting related relief; and upon consideration of the First Day Declaration; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that this is a core matter pursuant to 28 U.S.C. § 157(b)(2) and this Court having determined that it may enter a final order consistent with

---

[1] The last four digits of the Debtor's federal tax identification number are 7778. The Debtor's mailing address is 1266 East Main St., Stamford, CT 06902.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Article III of the United States Constitution; and it appearing that venue of the Chapter 11 Case and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      The Debtor is authorized, in its sole discretion, to: (i) continue operating the Cash Management System and honor any prepetition obligations related thereto; (ii) maintain existing Bank Accounts and Business Forms; (iii) maintain the ability to use debit, wire and ACH payments; and (iv) continue to deposit and invest funds in accordance with its current practices to the extent set forth herein.

3.      The Debtor is further authorized, in its sole discretion, to: (i) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those accounts identified on Exhibit C to the Motion; (ii) use, in their present form, all Business Forms, without reference to the Debtor's status as debtor in possession; (iii) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession; (iv) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH payments, and other debits; and (v) pay any ordinary course prepetition or postpetition fees incurred in connection with the Bank Accounts and to otherwise perform its obligations under the documents governing the Bank Accounts.

4.     The Banks are authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts in accordance with prepetition practices as accounts of a debtor in possession, without interruption and in the ordinary course of business.  In this regard, the Banks are authorized, but not directed, to receive, process, honor and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn or directed on the Bank Accounts by holders, makers or other parties entitled to issue instructions with respect thereto on account of any claim arising (i) on or after the Petition Date or (ii) prior to the Petition Date and otherwise authorized by this Court.

5.     In the course of providing cash management services to the Debtor, the Banks, without further order of this Court, are authorized, but not directed, to (i) charge, and the Debtor is authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtor; and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on or subsequent to the Petition Date, in the ordinary course.

6.     The Debtor and the Banks are hereby authorized, but not directed, to continue to perform pursuant to the terms of any unexpired prepetition cash management agreements that may exist between them, except and to the extent otherwise directed by the terms of this Final Order and except as amended, modified, or supplemented by agreement between the Debtor and such Bank in the ordinary course of business.

7.     Notwithstanding any other provision of this Final Order, the Banks are authorized, but not directed, to rely on the representations of the Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtor prior to the Petition Date

3

should be honored pursuant to any order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (i) at the direction of the Debtor; (ii) in a good-faith belief that this Court has authorized such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Final Order nor be liable to the Debtor, its estate, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

8. The Banks are further authorized, but not directed, to accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions; *provided*, in each case, that the Banks shall not have any liability to any party for relying on such representations.

9. For any Banks at which the Debtor holds accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall have thirty (30) days from the entry of the Interim Order to comply with section 345 of the Bankruptcy Code unless further extended by agreement of the U.S. Trustee or order of this Court, and the Debtor shall use its good-faith efforts to cause any such Bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days from the entry of the Interim Order.

10. The Debtor is authorized to use its existing Business Forms; *provided, however*, that once the Debtor's existing checks have been used, the Debtor shall, when reordering checks, require the designation "Debtor in Possession" or "DIP" and the bankruptcy case number on all checks.

11. The Banks are authorized, but not directed, to debit the Debtor's accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts which are cashed at such Banks'

counters or exchanged for cashier's checks by the payees thereof prior to the Banks' receipt of notice of filing of the Chapter 11 Case; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtor's accounts with the Banks prior to filing of the Chapter 11 Case which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to filing of the Chapter 11 Case; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

12.    Nothing contained herein shall prevent the Debtor from closing any Bank Account(s) or opening any additional bank accounts, as it may deem necessary and appropriate, and the Banks are authorized, but not directed, to honor the Debtor's requests and to close or open such Bank Accounts or additional bank accounts, as the case may be; *provided* that notice of the opening or closure of any account shall be given to the U.S. Trustee and counsel to any statutory committee within fifteen (15) days; *provided*, *further*, that any new bank accounts shall be opened at a bank that is party to a Uniform Depository Agreement with the U.S. Trustee, or at a bank that is willing to immediately execute a Uniform Depository Agreement.

13.    The Payment Processors used by the Debtor are authorized to offset chargebacks, returns, and fees on account of customer purchases that may have arisen before the Petition Date in the ordinary course of business and in a manner consistent with past practice.

14.    For any PayPal account maintained by the Debtor, the Debtor shall use reasonable good faith efforts to ensure that the daily balance in the account does not exceed $30,000. The Debtor shall provide to the U.S. Trustee, on a bi-weekly basis, statements showing the daily balances in any PayPal accounts.

5

15.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor and its estate, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to the validity, priority, or amount of any claim against the Debtor and its estate, (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to any and all claims or causes of action against any party in interest, or (iv) shall be construed as a promise to pay a claim.

16.     The Debtor is authorized to continue engaging in intercompany transactions in the ordinary course of business; *provided, however*, that there shall be no intercompany loans from or to the Debtor absent further order of the Court.

17.     The Debtor shall maintain accurate and detailed records of all transfers, including intercompany transfers, so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and post-petition transactions.

18.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Final Order shall be effective immediately and enforceable upon its entry.

19.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order.

20.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Final Order.

Dated: _____, 2020
          Wilmington, Delaware

_____
UNITED  STATES  BANKRUPTCY  JUDGE

**EXHIBIT C**

**List of Bank Accounts**

| Name on Account | Bank Name | Last Four Digits of Account Number | Type of Account |
|---|---|---|---|
| Alpha Entertainment | JP Morgan Chase | 6539 | Concentration Account |
| Alpha Entertainment | JP Morgan Chase | 9632 | Main Disbursement Account |
| Alpha Entertainment | JP Morgan Chase | 7008 | FSA Auto-Debit Account |
| Alpha Entertainment | JP Morgan Chase | 2606 | Collateral Account |
| Alpha Entertainment | JP Morgan Chase | 7602 | Disbursement Account |