# Exhibit A

## Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| ALPHA ENTERTAINMENT LLC, | ) | Case No. 20-10940 (LSS) |
| | ) | |
| Debtor. | ) | |
| | ) | Ref. Docket Nos. 7, 51 |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, 364
AND 507 (A) AUTHORIZING POST-PETITION FINANCING,
(B) AUTHORIZING USE OF CASH COLLATERAL,
AND (C) SCHEDULING A GRANTING RELATED RELIEF**

THIS MATTER having come before the Court upon the motion [Docket No. 7] (the "DIP Motion") of Alpha Entertainment LLC (the "Debtor") in the above-captioned chapter 11 case (the "Case") pursuant to Sections 105, 362, 363, 364(c) and (d), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), seeking, among other things:

(i)    authorization for the Debtor to obtain a secured post-petition financing facility (the "DIP Facility"), in the form of a delayed draw, multiple draw term loan in the aggregate amount of up to [$1,500,000] (plus interest, costs, fees, and other expenses and amounts provided for in the DIP Term Sheet) pursuant to the terms and conditions set forth in that certain General Term Sheet for Post-Petition Debtor-in-Possession Financing attached as Exhibit A hereto (the "DIP Term Sheet"),[1] by and between the Debtor and Vincent K. McMahon ("DIP Lender");

(ii)    authorization for the Debtor to use cash collateral, as defined by Section 363(a) of the Bankruptcy Code ("Cash Collateral");

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DIP Term Sheet.

(iii)    authorization for the Debtor to execute and deliver the DIP Term Sheet and to perform such other and further acts as may be required in furtherance of the DIP Facility and the DIP Term Sheet;

(iv)    authorization for the Debtor to draw on the DIP Facility in an amount not to exceed the Availability (as defined below), subject to the conditions precedent set forth in the DIP Term Sheet, and to use proceeds of the DIP Facility to pay for, among other things, working capital, general corporate purposes of the Debtor, and the expenses associated with administration of the Case, but only in accordance with the then-current Approved DIP Budget (as defined in the DIP Term Sheet and a copy of which is attached hereto as Exhibit B);

(v)    subject to the Carve-Out (as defined below), the granting of allowed superpriority administrative expense claim status in the Case to the DIP Facility and all obligations arising thereunder (collectively, the "DIP Obligations");

(vi)    subject to the Carve-Out (as defined below), the granting to the DIP Lender of first-priority security interests in and liens on all of the property, assets or interests in property of the Debtor and the Debtor's "estate" (as defined in the Bankruptcy Code) (collectively, the "DIP Collateral") to secure all DIP Obligations;

(vii)    subject to the Carve-Out, the granting to the DIP Lender, as adequate protection for amounts advanced to the Debtor prepetition under a Senior Secured Promissory Note dated March 25, 2020 (as amended, the "Prepetition Secured Note"), adequate protection in the form of replacement liens and superpriority administrative expense claims as set forth in this Final Order;

(viii)    granting such relief, the waiver by the Debtor of any right to surcharge against the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise;

2

(ix)    modification of the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to provide the DIP Lender with the relief necessary to implement and effectuate the terms and provisions of the DIP Term Sheet; and

(x)    that a final hearing (the "Final Hearing") be held on or before May 15, 2020, to consider entry of a final order (the "Final Order") authorizing the credit available under the DIP Term Sheet and use of Cash Collateral, all as set forth in the DIP Motion and the DIP Term Sheet.

NOW THEREFORE, the Court having entered that certain *Interim Order Authorizing Use of Cash Collateral, Scheduling a Final Hearing and Granting Related Relief* [Docket No. 51] (the "Cash Collateral Order") and having considered the DIP Motion, the DIP Term Sheet, and any evidence submitted at the hearings held on April 15, 2020 and April 20, 2020 (collectively, the "Interim Hearing"), including the First Day Declaration; and due and appropriate notice of the DIP Motion, the relief requested therein, and notice of the heairng having been given in accordance with the Cash Collateral Order, Bankruptcy Rules 2002, 4001, and 9014 and under the circumstances; and the Final Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief requested is necessary to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential to the Debtor's efforts to preserve and maximize the value of its assets during the course of the Case; and it further appearing, that the Debtor's estate is unable to obtain unsecured credit for money borrowed allowable as an

administrative expense under Section 503(b)(1) of the Bankruptcy Code; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTOR, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date*. On April 13, 2020 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing the Case.

B.    *Debtor-in-Possession*. The Debtor is currently operating its business as debtor-in-possession pursuant to section 1101 of the Bankruptcy Code.

C.    *Jurisdiction and Venue*. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the Case, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Official Committees*.   On April 23, 2020, the United States Trustee for the District of Delaware (the "United States Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in the Case pursuant to Section 1102 of the Bankruptcy Code.

E.    *Notice*. Under the circumstances, the notice given by the Debtor of the DIP Motion, the relief requested therein, and the Final Hearing constitutes appropriate, due, and sufficient notice thereof and complies with the Bankruptcy Rules and Local Rules, and under the circumstances no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

4

F.      *Findings Regarding the Post-petition Financing*.

(i)      *Cause*. Good cause has been shown for entry of this Final Order.

(ii)      *Need for Post-petition Financing.* The Debtor has demonstrated sound business justifications for the need to obtain the DIP Financing to facilitate its efforts to preserve and maximize the value of its assets pursuant to a Court-approved sale and marketing process. Without the financing proposed by the DIP Motion, the Debtor may not have sufficient funds to meet, among other things, its payroll obligations or to pay operating and other expenses during the Case and could be forced to liquidate absent access to the liquidity provided under the DIP Facility.  Failure to obtain the relief requested in the DIP Motion will risk harm to the Debtor, its estate, and creditors.  Consummation of the DIP Facility in accordance with the DIP Term Sheet is therefore in the best interests of the Debtor and its estate, and is consistent with the Debtor's fiduciary duties.

(iii)      *No Credit Available on More Favorable Terms.* The Debtor is unable to obtain financing on terms more favorable than those offered by the DIP Lender under the DIP Facility and is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or to obtain secured credit under Section 364(c) of the Bankruptcy Code on equal or more favorable terms than those offered by the DIP Lender under the DIP Facility. A credit facility in the amount and under the terms provided under the DIP Facility is not available from the DIP Lender without the Debtor (a) granting to the DIP Lender, subject to the Carve-Out (as defined below), the DIP Liens and DIP Superpriority Claims (each as defined below) and (b) the other protections set forth in this Final Order.

(iv)      *Use of Proceeds of the DIP Facility.* As a condition to the extension of credit under the DIP Facility, the DIP Lender and the Debtor have agreed that proceeds of any

advance made under the DIP Facility shall be used exclusively in a manner consistent with the terms of the DIP Facility, the DIP Term Sheet, and the Approved DIP Budget, including for ordinary and necessary operating costs and expenses arising during the Case or other payments as may be agreed to by the DIP Lender. No portion of the proceeds of any advance under the DIP Facility shall be used, directly or indirectly, to make any payment or prepayment that is prohibited under the DIP Term Sheet or that is not provided for or included in the Approved DIP Budget.

G.    *Good Faith of the DIP Lender.*

(i)    *Willingness to Provide Financing.* The DIP Lender has indicated a willingness to provide financing to the Debtor, subject to: (a) the entry of this Final Order; and (b) the approval of the terms and conditions of the DIP Facility and the DIP Term Sheet.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facility and the DIP Term Sheet are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the exercise of prudent business judgment by the Debtor consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Term Sheet and DIP Facility were negotiated without collusion, in good faith and at arm's length between the Debtor (under the supervision of an independent manager acting in his capacity as the liquidating agent of the Debtor under the Debtor's limited liabability company agreement) and the DIP Lender. Use of credit to be extended under the DIP Facility and use of Cash Collateral shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, within the meaning of Section 364(e) of the Bankruptcy Code and in express reliance on the protections offered by 364(e) of the

6

Bankruptcy Code, and the DIP Lender is entitled to the protection and benefits of 364(e) of the Bankruptcy Code.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.     <u>Financing Approved</u>. The DIP Motion is granted in accordance with the terms of this Final Order and to the extent set forth herein.

2.     <u>Objections Overruled</u>. All objections to the DIP Motion to the extent not withdrawn or resolved, and all reservations of rights included therein, are hereby overruled.

3.     <u>Authorization of the DIP Facility</u>. The Debtor is expressly and immediately authorized to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Term Sheet, which is expressly approved and incorporated herein by reference. The Availability (defined below) is hereby approved upon the terms and conditions set forth herein and in the DIP Term Sheet. The DIP Obligations shall represent valid and binding obligations of the Debtor, enforceable against its estate in accordance with their terms.

4.     <u>Authorization to Execute Documentation</u>. The Debtor is hereby authorized to execute, enter into, and deliver the DIP Documents and all instruments and documents that may be required or reasonably necessary for the performance under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) as described in and provided for by this Final Order and the DIP Term Sheet and as may be required by the DIP Lender. Pending the execution of the DIP Documents, the DIP Term Sheet and this Final Order shall evidence the validity and

304661676 v1

binding effect of the DIP Obligations and shall govern the financial accommodations to be provided by the DIP Lender.

5.    <u>Authorization to Borrow</u>. Subject to the terms, conditions, and limitations on availability set forth in the DIP Term Sheet and this Final Order, and to prevent harm to the Debtor's estate, the Debtor is hereby authorized to request one or more advances under the DIP Facility in an aggregate amount not to exceed [$1,500,000.00] (the "<u>Availability</u>") in the manner prescribed in and subject to the terms of the DIP Term Sheet.

6.    <u>No Obligation to Extend Credit</u>. The DIP Lender shall have no obligation to make any loan or advance under the DIP Term Sheet unless all of the conditions precedent to the making of such extension of credit under the DIP Term Sheet and this Final Order have been satisfied in full or waived by the DIP Lender in its sole discretion.

7.    <u>Budget; Use of DIP Facility Proceeds</u>. From and after the entry of this Final Order, the Debtor shall use advances under the DIP Facility only for the purposes specifically set forth in this Final Order and the DIP Term Sheet and in compliance with the Approved DIP Budget. Actual expenditures made by the Debtor shall not exceed the amounts set forth in the Approved DIP Budget in any week by more than fifteen percent (15%) for any single line item or ten percent (10%) in the aggregate for any applcable period (the "<u>Permitted Variance</u>"); *provided*, *however*, that if the actual aggregate disbursements for a given week do not exceed 100% of the aggregate budgeted disbursements for such week, then the aggregate permitted disbursements for the next week shall be increased by such aggregate deficiency on a rolling, cumulative basis. Except for the professional fees and expenses, the Permitted Variance shall be tested at the end of each week beginning with the end of the first week following April 20, 2020, both for the preceding week and cumulatively from the Petition Date through the end of the most

recently completed week. The Permitted Variance for professional fees and expenses shall be measured on a monthly basis after the issuance of the invoices to the Debtor by the applicable professional firm. The terms of this paragraph 7 are hereinafter referred to as the "Budget Covenant").

8.    <u>Superpriority Claims</u>. Pursuant to Section 364(c)(1) of the Bankruptcy Code, but subject to the Carve-Out (as defined below), all of the DIP Obligations shall constitute allowed superpriority administrative expense claim (a "<u>Superpriority Claim</u>") against the Debtor (the "<u>DIP Superpriority Claims</u>") with priority over any and all administrative expense claims, adequate protection claims, diminution claims, and all other claims against the Debtor or its estate in the Case, at any time existing or arising, of any kind or nature whatsoever, including without limitation, administrative expenses of the kinds specified in or arising under Bankruptcy Code Sections 105, 326, 328, 330, 331, 364(c), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, whether now in existence or hereafter incurred by the Debtor, and shall at all times be senior to the rights of the Debtor, the Debtor's estate, and any successor trustee, estate representative, or any creditor, in the Case or any successor case.

9.    <u>DIP Liens</u>.

(a)    As security for the DIP Obligations, effective and perfected upon the date of this Final Order and without the necessity of the execution or recordation of filings by the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Lender

9

over any DIP Collateral, the following security interests and liens are hereby granted by the Debtor to the DIP Lender (the "DIP Liens"):

    (i)    a priming, first priority, and perfected security interest in, and lien, under sections 364(c)(2) and 364(d) of the Bankruptcy Code, upon all DIP Collateral of the Debtor and the Debtor's estate, which liens shall be senior to and prime any and all liens on the Debtor DIP Collateral that are not Permitted Priming Liens (as defined below);

    (ii)    a junior lien, under section 364(c)(3) of the Bankruptcy Code, upon all of the DIP Collateral of the Debtor and the Debtor's estate that is, as of the Petition Date, subject to Permitted Priming Liens.

    (b)    The DIP Liens shall be senior priming liens on all DIP Collateral senior to all other liens thereon, but subject only to (i) the Carve-Out and (ii) Permitted Priming Liens.

    (c)    The DIP Collateral shall not include any claims or causes of action arising under sections 542, 544, 545, 547, 548, 550, 551, 553(b), or 724(a) of the Bankruptcy Code (collectively, "Avoidance Actions").

    (d)    For purposes of this Final Order, "Permitted Priming Liens" means valid, perfected, and non-avoidable Permitted Liens (as defined below) in existence on the Petition Date that are not subject to subordination and were either properly perfected as of the Petition Date or subsequently perfected pursuant to section 546(b) of the Bankruptcy Code. For purposes of this Final Order, "Permitted Liens" means: (a) liens arising by operation of law in favor of warehousemen, landlords, carriers, mechanics, materialmen, laborers or suppliers, in each case incurred in the ordinary course of business and not in connection with the borrowing of money, (b) liens incurred in the ordinary course of business in connection with workers' compensation and other unemployment insurance, or to secure the performance of tenders, surety and appeal

bonds, bids, leases, government contracts, trade contracts and other similar obligations (exclusive of obligations for the payment of borrowed money), and (c) rights of setoff or bankers' liens upon deposits of cash in favor of banks or other depository institutions.

10.     <u>Perfection of DIP Liens</u>. The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the date of this Final Order. This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender is authorized to file, in the DIP Lender's sole discretion as it deems necessary, such financing statements, deeds of trust, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, and all such financing statements, deeds of trust, mortgages, notices, other documents, and approvals shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The Debtor is authorized and directed to execute, as applicable, and deliver promptly upon demand to the DIP Lender all such financing statements, mortgages, notices, and other documents as the DIP Lender may reasonably request. The DIP Lender in its discretion may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument. Any provision of any lease, loan document, easement, use agreement, proffer,

covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting in favor of the DIP Lender a priority security interest in such fee, leasehold, or interest or other collateral or the proceeds of any assignment, sale, or other transfer thereof, by the Debtor in favor of the DIP Lender in accordance with the terms of the DIP Term Sheet and this Final Order.

11.    <u>Adequate Protection for Prepetition Secured Note</u>. The DIP Lender, on account of the Prepetition Secured Note, has asserted it is entitled pursuant to Sections 361, 363(c)(2), and 364(d)(1) of the Bankruptcy Code to adequate protection of the DIP Lender's interest in the collateral for the Prepetition Secured Note (the "<u>Prepetition Collateral</u>"), including Cash Collateral, in an amount equal to the diminution in value of the Prepetition Collateral, including any such diminution resulting from the sale, lease, or use by the Debtor (or other decline in value) of the Prepetition Collateral, the priming by the DIP Liens of the liens securing the Prepetition Secured Note (the "<u>Prepetition Liens</u>"), as well as the imposition of the automatic stay (such diminution, the "<u>Adequate Protection Obligations</u>"). As adequate protection and security for the payment of the Adequate Protection Obligations, the DIP Lender, on account of the Prepetition Secured Note, shall have the following:

(a)    <u>Adequate Protection Liens</u>. The DIP Lender is hereby granted (effective and perfected upon the date of this Final Order and without the necessity of the execution by the Debtor of security agreements, pledge agreements, mortgages, financing statements, or other

304661676 v1

agreements) a valid, perfected replacement security interest in and lien on all of the DIP

Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the DIP Liens,

(ii) Permitted Priming Liens, and (iii) the Carve Out.

(b)    Section 507(b) Claim. The Adequate Protection Obligations shall

constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the

"Adequate Protection Priority Claims"), with priority in payment over any and all administrative

expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code,

including without limitation, sections 326, 328, 330, 331, and 726 of the Bankruptcy Code,

subject and subordinate only to (i) the Carve Out and (ii) the DIP Superpriority Claims.

12.    Carve-Out.

(a)    The DIP Liens, Adequate Protection Liens, and Prepetition Liens, and the

DIP Superpriority Claims and the Adequate Protection Superpriority Claims, shall be subject to a

carve-out (the "Carve-Out") for the following, and in the following priority (i) all fees (and

interest) required to be paid to the Clerk of the Bankruptcy Court and to the United States

Trustee; (ii)  subject to the restrictions in Paragraph 13 of this Final Order, the amount of allowed

and unpaid fees, costs, and expenses of the estate's court-approved professionals in the Case

incurred from and after the occurrence of an Event of Default, in an aggregate amount not to

exceed (x) $175,000 in the case of the Debtor's court-approved professionals and (y) $30,000 in

the case of court-approved professionals retained by a committee, if any, appointed in the Case

under Section 1102 of the Bankruptcy Code (a "Committee"); and (iii) the amount of allowed

and unpaid fees, costs, and expenses of the estate's court-approved professionals in the Case

incurred prior to the occurrence of an Event of Default, not to exceed the amounts set forth in

applicable lines of the Approved DIP Budget as of any applicable date of determination;

<u>provided</u> that in no event shall the DIP Lender be obligated to loan funds to pay any claims to the extent that such amounts would, when combined with the amounts advanced under the DIP Facility, exceed the maximum principal amount of commitments under the DIP Facility.

(b)     Upon the occurrence and continuance (beyond any applicable grace period) of an Event of Default (as defined in the DIP Term Sheet), the right of the Debtor to pay fees and expenses of professionals retained by order of the Bankruptcy Court outside of the Carve-Out shall immediately terminate (a "<u>Carve-Out Event</u>"), and upon such occurrence, the Debtor shall provide immediate notice by facsimile and e-mail to all professionals informing them that a Carve-Out Event has occurred and further advising them that the Debtor's ability to pay estate professionals is subject to the Carve-Out.

(c)     Notwithstanding anything herein to the contrary, prior to a Carve-Out Event, the Debtor shall, in accordance with the Approved DIP Budget and the terms of the DIP Term Sheet and subject to the terms of this Final Order and any other relevant orders of the Bankruptcy Court, be permitted to pay compensation and reimbursement of expenses to professionals allowed and payable under sections 330 and 331 of the Bankruptcy Code and such orders of the Bankruptcy Court authorizing the payment of compensation and reimbursement of expenses that have been incurred prior to the occurrence of such Carve-Out Event.

(d)     Nothing herein or in the DIP Term Sheet shall constitute a cap on the amount of professional fees and expenses that may be incurred or allowed in the Case; <u>provided</u> that no payments of such fees and expenses shall be made in excess of the amounts contained within or inconsistent with the Approved DIP Budget and the Budget Covenant.

13.     <u>Restrictions on Use of Proceeds of DIP Facility</u>. No proceeds from the DIP Facility or the Carve-Out may be used (1) to investigate or challenge in any respect the validity, priority, perfection, extent, or enforceability of the liens securing the DIP Facility or the Prepetition Secured Note or (2) to

investigate or pursue any claims or causes of action of any kind against the DIP Lender; provided, that the proceeds from the DIP Facility or the Carve-Out may be used to pay the fees of professionals retained by a Committee, if any, to investigate the liens security the Prepetition Secured Note, in an amount not to exceed $20,000.

14.    Termination. All DIP Obligations shall be immediately due and payable on the earlier to occur of (i) Maturity Date and (ii) the occurrence of an Event of Default, in full and in cash without deduction or setoff, and all of the DIP Lender's commitments under the DIP Facility will terminate, including any further obligation to extend credit.

15.    Milestones. The DIP Lender's obligation to fund advances to the Debtor under the DIP Facility shall be subject to the Debtor's satisfaction of the following (the "Milestones"):

(a)    on or before May 15, 2020, the Bankruptcy Court shall have entered on the docket this Final Order approving the DIP Motion on a final basis, in form and substance satisfactory to the DIP Lender;

(b)    on or before May 15, 2020, the Bankruptcy Court shall have entered on the docket an order approving bidding procedures for the Sale, in form and substance satisfactory to the DIP Lender; and

(c)    on or before July 15, 2020, the Bankruptcy Court shall have entered on the docket an order approving the Sale, in form and substance satisfactory to the DIP Lender.

16.    Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" under the DIP Facility:

(a)    The Debtor's failure to make any payments of fees, principal, or interest on any amounts owed hereunder or in accordance with this Final Order or the DIP Term Sheet;

(b)     The Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(c)     This Final Order shall be stayed, amended, modified, reversed, or vacated without the written consent of the DIP Lender, which stay is not vacated, or which amendment, modification, reversal, or vacatur is not stayed within three (3) business days following the imposition of such stay or the effective date of such amendment, modification, reversal or vacatur;

(d)     Any DIP Collateral is sold without the prior written consent of the DIP Lender;

(e)     The failure by the Debtor to achieve any of the Milestones;

(f)     The Debtor shall file any application in support of any of (a) through (d) above;

(g)     The Debtor's filing of a motion to appoint, any other party's filing of a motion to appoint if such motion is not resolved within thirty (30 days), or the appointment of, a trustee or examiner with expanded powers in the Case;

(h)     The Debtor shall file a motion or other pleading seeking to grant a lien on the DIP Collateral that is equal or senior to the DIP Liens;

(i)     The Court shall enter an order granting relief from the automatic stay to allow for foreclosure on any DIP Collateral with an aggregate book value in excess of $150,000;

16

(j)     The Debtor's failure to perform, in any respect, any of the terms, conditions, covenants, or obligations under the DIP Term Sheet or this Final Order; or

(k)     Any other Event of Default as set forth in the DIP Term Sheet.

17.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>. The DIP Lender has acted in good faith in connection with the DIP Facility, DIP Term Sheet, and this Final Order and the DIP Lender's reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code.

18.     <u>Proofs of Claim</u>. The DIP Lender will not be required to file proofs of claim in the Case for any claim allowed herein in relation to the DIP Facility or the Prepetition Secured Note. The DIP Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend or supplement, as applicable and as it sees fit) a proof of claim in the Case for any claim allowed herein in relation to the DIP Facility or the Prepetition Secured Note.

19.     <u>Limitations on the DIP Facility and the DIP Collateral</u>. The DIP Facility and the Collateral may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (b) selling or otherwise disposing of the DIP Collateral without the prior written consent of the DIP Lender; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the prior written consent of the DIP Lender; (d) objecting or

challenging in any way any claims, liens, or the DIP Collateral, as the case may be, held by or on behalf of the DIP Lender with respect to the DIP Facility; or (e) prosecuting an objection to, contesting in any manner, or raising any defenses to (but not the investigation of), the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, or any other rights or interests of the DIP Lender.

20.    <u>Prohibition on Liens/Subordination</u>. Except as otherwise provided in the DIP Term Sheet or this Final Order, the DIP Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with, any other lien, security interest, or claim existing as of the Petition Date, or created under Sections 363 or 364(d) of the Bankruptcy Code or otherwise, or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code.

21.    <u>Modification of Automatic Stay</u>. The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified solely (i) to the extent necessary to authorize the Debtor to pay from time to time following the Petition Date, and DIP Lender to retain and apply payments made, in accordance with the terms of this Final Order and the DIP Term Sheet, including, without limitation, payments of accrued interest and payments of principal amounts outstanding under the DIP Facility and (ii) upon the occurrence of an Event of Default and following five (5) business days' written notice (the "<u>Notice Period</u>") by the DIP Lender to the Debtor, counsel to the Debtor, counsel to the Committee and the United States Trustee (collectively, the "<u>Notice Parties</u>") of the occurrence of such Event of Default, subject to an ability to cure, if such Event of Default is capable of being cured, during the Notice Period, to permit the DIP Lender to take any and all actions and remedies to proceed against, take possession of, protect and realize upon the DIP Collateral and any other property of the estate of

the Debtor upon which the DIP Lender has been or may hereafter be granted liens and security interests to obtain repayment of the DIP Obligations to the DIP Lender; provided, that such notice by the DIP Lender shall not prejudice the rights of the Notice Parties to file a motion (the "Opposition Motion") with the Court opposing the termination of the automatic stay or the occurrence of an Event of Default; provided, further, that upon the filing of such motion the DIP Lender shall be stayed from taking any actions or remedies against the DIP Collateral until the Court hears and disposes of such motion. During the Notice Period and during the period following the filing of an Opposition Motion, the Debtor may use Cash Collateral to pay the following amounts and expenses in accordance with the Approved DIP Budget:  (i) expenses that the Debtor has determined in good faith are in the ordinary course and critical to the preservation of the Debtor and its estate, and (ii) such other amounts as have been approved in advance in writing by the DIP Lender.  Notwithstanding the foregoing, nothing herein shall limit or restrict issues to be decided by the Court upon an Event of Default.

22.    No Third Party Rights. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

23.    DIP Fees and Expenses. The Debtor is authorized and directed to pay all fees payable under the DIP Term Sheet and the professional fees and expenses of the DIP Lender in connection with the DIP Facility, as provided in the DIP Term Sheet and the DIP Budget (the "DIP Fees and Expenses"). The Debtor shall pay all DIP Fees and Expenses invoiced and outstanding as of the date of entry of this Final Order on or immediately following the Closing Date. Thereafter, the Debtor shall pay DIP Fees and Expenses from time to time within fifteen (15) business days (if no written objection is received within ten (10) business days) after such

19

professional has delivered a summary invoice providing reasonable detail with respect to the fees and expenses incurred to the Debtor (which invoice may be redacted to protect privileged, confidential, or proprietary information), with a copy of such invoice delivered simultaneously to the United States Trustee and the Committee. Written objections to the payment of DIP Fees and Expenses must contain a specific basis for the objection and quantification of the undisputed amount of the DIP Fees and Expenses invoiced. None of the DIP Fees and Expenses shall be subject to Court approval or required to be maintained in accordance with guidelines promulgated by the United States Trustee and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided however, that the Debtor shall be required to pay (i) the undisputed amount of any invoice on or prior to the fifteenth (15th) business day following delivery of such invoice, notwithstanding any objection to other amounts on such invoice, and (ii) any disputed amounts within five (5) business days following resolution of the dispute with respect to such amounts.

24.     Bankruptcy Code Section 506(c). The Debtor waives the right to seek to surcharge the DIP Collateral under section 506(c) of the Bankruptcy Code, to the extent such section applies.

25.     No Waiver by Failure to Seek Relief. The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Final Order, the DIP Term Sheet, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

26.     Binding Effect of Final Order. Immediately upon entry of this Final Order by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Lender, all other creditors of the Debtor, and all other

304661676 v1

parties in interest and their respective successors and assigns, including upon dismissal of the Case.

27.    <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the DIP Motion, any other order of this Court, the DIP Term Sheet, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, the terms and provisions of this Final Order shall govern.

28.    <u>No Modification of Final Order</u>. Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility have been terminated, the Debtor irrevocably waives the right to seek and shall not, without the DIP Lender's prior written consent, seek, or consent to, directly or indirectly: (a) any modification, stay, vacatur, or amendment to this Final Order; or (b) the granting of any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided herein or in the DIP Term Sheet.

29.    <u>Modifications of DIP Term Sheet and Approved DIP Budget</u>.  The Debtor and the DIP Lender may implement non-material modifications of the DIP Documents (after consultation with the Committee) on at least seven (7) calendar days prior notice to the Committee and the United States Trustee, both of which shall have the right to object on grounds that the proposed modification is material and should be subject to the notice procedures set forth in this Final Order with respect to material modifications. The Debtor and the DIP Lender may implement material modifications of the DIP Documents only after prior notice to the Committee and the United States Trustee and only after notice and a hearing.

30.    <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

31.    <u>Survival</u>. The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the DIP Lender pursuant to this either or both this Final Order and the DIP Term Sheet, notwithstanding the entry of any such order, shall continue in the Case, or following dismissal of the Case, and shall maintain their priority as provided by this Final Order until all the DIP Obligations, pursuant to the DIP Term Sheet and this Final Order, have been indefeasibly paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Facility that survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated.

32.    <u>Bankruptcy Rule 7052</u>. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Any findings of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

304661676 v1

33.     Notwithstanding anything to the contrary herein, this Final Order is without prejudice to the rights, if any, of any party in interest to object to, contest, or seek standing with respect to (i) the validity, amount or allowance of the Prepetition Secured Note, (ii) whether Debtor's cash is cash collateral as that term is defined in the Bankruptcy Code; (iii) the collateral pledged to secure the Prepetition Secured Note, (iv) the extent, validity, priority, perfection, extent or enforceability of any liens securing the Prepetition Secured Note, (v) whether any claims or causes of action exist against the Prepetition Lender relating to the Prepetition Secured Note or otherwise, and/or (vi) whether use of the Prepetition Collateral, including any cash collateral, will result in diminution as contemplated by the Bankruptcy Code.

34.     <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

304661676 v1

## **Exhibit A**

DIP Term Sheet


[TO BE PROVIDED]

## **Exhibit B**

Approved DIP Budget

[TO BE PROVIDED]

304661676 v1