**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>ALPHA ENTERTAINMENT LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-10940 (LSS) |

**LIMITED OBJECTION OF ESPN, INC. TO DEBTOR'S NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

ESPN, Inc. (together with its affiliates, "**ESPN**"), by and through its undersigned attorneys, submits this limited objection (the "**Limited Objection**") to the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* ("**Notice**") [Dkt. 202] filed by Alpha Entertainment LLC ("**Alpha**" or the "**Debtor**"). In support the Limited Objection, ESPN respectfully represents as follows:

**Preliminary Statement**

1.  ESPN is an American sports media company owned by The Walt Disney Company and with Hearst Communications. ESPN owns and operates various sports broadcasting operations, including multiple domestic and international cable channels (including the namesake ESPN), digital networks and platforms, and other assets. Most content on ESPN networks consists of live or tape-delayed sporting events, sports news programming, sports talk shows, and original series and documentaries.

2.  Prepetition, ESPN and the Debtor entered into an arrangement for ESPN to telecast an annual package of football games of the Debtor's football league. As discussed in more detail below, the arrangement was memorialized in two concurrent documents: (a) a document titled

ESPN, INC./American Broadcast Companies, Inc. Agreement, dated May 2, 2019 (the "**Telecast Agreement**"), setting forth certain rights and obligations of the parties with respect to the telecasting of the games and related services, which was executed by the Debtor and ESPN; and (b) a certain Profit Participation Interest Agreement also dated May 2, 2019 (the "**PPIA**"), providing the method of compensating ESPN for its telecasting and related services, including from the profits distributable to the Debtor's equity and as more fully set forth in the PPIA, which was executed by the Debtor and ESPN, as well as by Vincent McMahon as equity holder.

3. On June 3, 2020, Alpha filed the Notice, which identifies certain executory contracts ("**Designated Contracts**") that Alpha is "potentially seeking" to assume and assign to a Successful Bidder (as defined in the Notice) in connection with a sale of Alpha's assets. The Notice identifies a "Broadcast Rights Agreement" with ESPN as a Designated Contract, but it does not indicate whether this designation encompasses both the Telecast Agreement and the PPIA.

4. ESPN interposes the following Limited Objection to the proposed assumption and assignment on two grounds. *First*, as detailed below, the Telecast Agreement and the PPIA constitute one integrated agreement that must be assumed (if legally permitted) together, *cum onere*. If Alpha intends to assume and assign the Telecast Agreement, it must also assume and assign the PPIA.

5. *Second*, ESPN entered into the Telecast Agreement and the PPIA based on the specific character and quality of certain professionals involved in creating and organizing the new XFL league, and promoting and producing XFL events. Their services, skills and talents are not fungible. Moreover, the Telecast Agreement and PPIA reflect a compensation structure to ESPN that constitutes a financial accommodation to Alpha Entertainment and the individuals connected with that organization, based on the parties' relationship and ESPN's assessment of the risk

involved in the compensation structure, specifically related to the relevant skills and experience of the individuals associated with Alpha Entertainment, as well as the personal commitment and investment of Mr. McMahon in the organization, all of which informed ESPN's resulting willingness to support Alpha Entertainment's efforts to launch the XFL. Accordingly, under section 365(c) of the Bankruptcy Code, the Telecast Agreement and the PPIA constitute both a personal service contract and a financial accommodation agreement that the Debtor may not assume and assign without ESPN's consent. Without knowing the identity and business plan of the proposed Successful Bidder, ESPN objects and does not consent to the potential assumption and assignment of the Telecast Agreement and the PPIA pursuant to the Notice.

6. Notwithstanding the foregoing, and reserving all rights, ESPN does not necessarily seek to categorically prohibit assignment of the Telecast Agreement and the PPIA to any party; however, ESPN files this Limited Objection to protect its rights in the sale process. ESPN encourages the Debtor and bidders to confer with ESPN regarding the conditions under which ESPN might consent to assignment of the Telecast Agreement and the PPIA.

## Background

7. On April 13, 2020, Alpha filed a voluntary chapter 11 bankruptcy petition in this Court.

8. Alpha remains in possession of its assets and has continued to manage its business as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code, 11 U.S.C. §§ 1107, 1108.

9. On May 28, 2020, the Court entered an *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets; (II) Scheduling an Auction for and Hearing to Approve the Sale; (III) Approving Notice of Respective Date, Time and Place*

*for Auction and for Hearing on Approval of Sale; (IV) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (V) Approving Form and Manner of Notice Thereof; and (VI) Granting Related Relief; and (B) an Order Authorizing and Approving (I) the Sale Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests; and (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (III) Related Relief* (the "**Bidding Procedures Order**") [Dkt. 181], which set forth procedures for the sale of substantially all of the Debtor's assets and the procedures for assumption and assignment of certain executory contracts.

10. On June 3, 2020, and in accordance with the Bidding Procedures Order, the Debtor filed the Notice, which identifies Designated Contracts that may be assumed and assigned to a Successful Bidder and calculating cure amounts.

## The Integrated Agreement

11. As described below, the Telecast Agreement and the PPIA were concurrently negotiated and executed, and they are part and parcel of one commercial arrangement and constitute one integrated agreement, governing the provision of telecasting and related services, on the one hand, and the compensation for those services on the other hand. There are two documents only because the compensation under the PPIA necessarily involved certain modifications to the Debtor's Operating Agreement, which required a signatory (Vincent McMahon) who is not a required signatory to the Telecast Agreement.

12. The Telecast Agreement and the PPIA work in tandem and contain extensive cross-references.

13. The merger clause in the Telecast Agreement, Section 14(d), explicitly ties the Telecast Agreement and the PPIA together:

> (d) Entire Agreement. This Agreement ***and the Profit Participant [sic] Interest Agreement*** contain the complete understanding of the Parties, supersedes all prior agreements whether written or oral pertaining to the subject-matter of this Agreement, and cannot be modified except by a written instrument signed by each Party hereto. The Parties expressly acknowledge that in entering into this Agreement they have not relied on any representations, written or unwritten, concerning the subject matter of this Agreement other than those contained herein and in the Profit Participation Interest Agreement.

Telecast Agreement § 14(d) (emphasis added).

14. Likewise, the merger clause in the PPIA, Section 13(d), integrates the PPIA with the Telecast Agreement, which is defined as the "Rights Agreement."

> (d) Entire Agreement. This Agreement, ***together with the Rights Agreement***, Operating Agreement and that certain Mutual Nondisclosure Agreement dated as of February 21, 2019, by and between Alpha and Holder, contains the entire understanding among the Parties, and supersedes any prior understandings and agreements between or among any of them, with respect to the subject matter of this Agreement.

PPIA § 13(d) (emphasis added).

15. Section 13 of the Telecast Agreement also reflects the interrelationship between the Telecast Agreement and the PPIA, acknowledging that the Telecast Agreement is consideration for the PPIA:

> In consideration of ESPN/ABC's undertakings pursuant to this Agreement (but without intending by the foregoing to modify in any manner the terms of the Profit Participation Interest Agreement or the entitlements thereunder, including, without limitation, provisions regarding vesting and non-forfeiture of interests in the event of a termination hereof), ESPN, Alpha and Vincent McMahon will execute the Profit Participation Interest Agreement simultaneously with this Agreement and effective as of the Effective Date. The Parties each acknowledge the adequacy and sufficiency of the consideration therefor and the receipt thereof.

Telecast Agreement § 13.

16. Importantly, the Telecast Agreement also contains a cross-default provision:

> A Party shall have the right to terminate this Agreement in the event that the other Party materially breaches a material representation or obligation hereunder and such breach is not cured within thirty (30) days of receipt of written notice of the breach from the non-breaching Party, other than those breaches which, by their nature, are incapable of being cured, for which there shall be no 30-day waiting period. ESPN/ABC shall additionally have the right to terminate this Agreement in the event that Alpha breaches a material representation or obligation set forth in that certain profit participation interest agreement by and among Alpha, Vincent McMahon and ESPN and being executed effective as of the Effective Date (the "Profit Participation Interest Agreement"), and such breach is not cured within thirty (30) days of receipt of written notice of the breach from ESPN/ABC, other than those breaches which, by their nature, are incapable of being cured, for which there shall be no 30-day waiting period. No such termination shall affect the terminating Party's rights and remedies at law for such breach.

Telecast Agreement § 10(a).

17. As a global leader in the sports programming industry, ESPN is highly selective with respect to ventures of this nature in choosing the entities and individuals with which it contracts, and it entered into the unique arrangement reflected by the Telecast Agreement and the PPIA – which does not provide any compensation to ESPN "above the line" as an operating expense of Alpha but only compensation out of Alpha's profits/equity – specifically because Alpha was an enterprise being promoted and operated by Alpha Entertainment with the investment and involvement of Vincent McMahon. Indeed, section 14(f) of the Telecast Agreement expressly provides that Alpha may not assign its interest in the Agreement to a third party without ESPN's prior written consent. The image and ultimate success of the XFL are heavily linked to the efforts, resources, and reputation of Vincent McMahon. If Vincent McMahon and his team of professionals are not running the XFL enterprise, then a key consideration for the Telecast

Agreement and the PPIA has disappeared, and ESPN cannot be compelled to join in a partnership with an assignee absent ESPN's express consent.

## Limited Objection

19. At this time, the proposed disposition of the Telecast Agreement and the PPIA pursuant to the proposed Bidding Procedures is uncertain. Accordingly, ESPN interposes this Limited Objection for the absence of doubt that it does not waive any rights it may have in connection with the Debtor's prospective disposition of these documents and, without limitation, specifically preserves the following issues and arguments which it may proceed upon at the sale hearing if not consensually resolved in advance of such hearing.

### A. The Telecast Agreement and the PPIA Constitute an Integrated Agreement That Must Be Assumed or Rejected Together.

19. If a debtor chooses to assume an executory contract, "it assumes the contract *cum onere*." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984). "[T]he debtor must accept 'both the obligations and the benefits of the executory contract.'" *In re Escarent Entities, L.P.*, 423 F. App'x 462, 466 (5th Cir. 2011). "[A] debtor may not reject a contract but maintain its benefits." *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also, e.g.*, *AGV Prods., Inc. v. Metro-Goldwyn-Mayer, Inc.*, 115 F. Supp. 2d 378, 390–91 (S.D.N.Y. 2000) ("Orion could not have assumed some of the provisions of an agreement and rejected others, because under the law of bankruptcy a contract cannot be assumed in part or rejected in part."), *aff'd,* 37 F. App'x 555 (2d Cir. 2002); *In re Lyondell Chem. Co.*, No. 13 CIV. 3881 RA, 2014 WL 975507, at *4 (S.D.N.Y. Mar. 11, 2014) (same); *In re Kaiser Grp. Int'l, Inc.*, 375 B.R. 120, 129 (Bankr. D. Del. 2007) ("The Debtors cannot seek to enforce part of the Arbitration Award and ignore the rest.").

20. "The *cum onere* rule 'prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement.'" *In re Fleming Cos., Inc.*, 499 F.3d 300, 308 (3d Cir. 2007) (quoting *United Air Lines, Inc v. U.S. Bank Trust Nat'l Ass'n (In re UAL Corp.)*, 346 B.R. 456, 468 n.11 (Bankr. N.D. Ill. 2006)). "[C]ontracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006), *aff'd*, 2008 WL 522516 (D. Del. Feb. 27, 2008); *see Philip Servs. Corp. v. Luntz (In re Philip Servs., Inc.)*, 284 B.R. 541, 547–48 (Bankr. D. Del. 2002), *aff'd*, 303 B.R. 574 (D.Del.2003); *In re Karfakis*, 162 B.R. 719, 725 (Bankr. E.D. Pa. 1993).

21. As set forth above, the Telecast Agreement and PPIA are two parts of an integrated whole that must be assumed or rejected as one. The PPIA is the consideration for the Telecast Agreement and vice versa.

22. To this point, importantly, <u>there are cross-default provisions between the agreements</u>: if the PPIA was rejected, it would constitute a breach not only under the PPIA but also under the Telecast Agreement, excusing ESPN's performance thereunder.

### B. The PPIA Is Intertwined with Alpha's Equity Structure and Likely Cannot Be Assigned in an Asset Sale.

23. As described above, the PPIA and the compensation to ESPN is tied into the Debtor's Operating Agreement. It is unclear how the Operating Agreement (and the PPIA) could be transferred in the course of the asset sale contemplated under the Bidding Procedures Order.

24. And because the PPIA and Telecast Agreement constitute a single integrated agreement that must be assumed or rejected together, the inability to assign the PPIA along with the Operating Agreement would also preclude assignment of the Telecast Agreement, absent ESPN's consent.

C. **Alpha May Not Assume the Telecast Agreement and the PPIA in Violation of Bankruptcy Code Sections 365(b)(1), (c)(1), and (c)(2).**

25. Under Bankruptcy Code section 365(c)(1)(A), a debtor cannot assign an executory contract where "applicable law excuses a party, other than the debtor, to such contract . . . from accepting performance from or rendering performance to an entity other than the debtor . . . ." 11 U.S.C. § 365(c)(1)(A). "[C]ontracts involving relationships of personal confidence and trust or personal services are not assignable by either party without the consent of the other party. *In re Planet Hollywood Int'l, Inc.*, No. 99-3612 (JJF), 2000 WL 36118317, at *4 (D. Del. Nov. 21, 2000) (applying Florida and California law). "The essence of a personal service contract is the parties' reliance on such qualities as character, reputation, taste, unique skill or unique talent." *Id.* at *5.

26. The content that ESPN chooses to broadcast is not fungible; its character and quality is directly related to the team of professionals that is producing that content. This is especially so when dealing with content being created by an entirely new enterprise (as opposed to content that is part of a well-established program and production enterprise). ESPN entered into the Telecast Agreement and PPIA with respect to the ambitious, new XFL launch because of the reputation and business acumen of Vincent McMahon and individuals at Alpha Entertainment. As such, the agreements are personal service contracts that may not be assumed without the consent of ESPN. Pursuant to section 14(f) of the Telecast Agreement, Alpha may not assign its interest in the Agreement to a third party without the prior written consent of ESPN. The decision as to programming content is an integral part of ESPN's worldwide corporate identity and reputation, and is therefore personal to ESPN, and ESPN cannot be compelled to accept performance from an entity with whom it does not wish to do business. If Vincent McMahon is not part of the enterprise, then a key consideration for the contracts has disappeared, and, pursuant to Bankruptcy Code

section 365(c)(1)(A), ESPN should not be required to remain in a partnership with an assignee unapproved by ESPN.

27. In addition, ESPN reserves the right to assert that the Telecast Agreement and the PPIA may not be assigned because they constitute a financial accommodation to Alpha. Under Bankruptcy Code section 365(c)(2), a debtor may not assume an executory contract "to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." 11 U.S.C. § 365(c)(2). The Telecast Agreement/PPIA is a unique arrangement that operates as a financial accommodation to Alpha, by not requiring Alpha to pay any amounts to ESPN for telecasting and related services under the Telecast Agreement "above the line" as an operating expense of Alpha and providing that ESPN instead be compensated for such services (absent a breach) solely pursuant to the PPIA.

28. ESPN also reserves its rights under Bankruptcy Code section 365(b)(1) as to any proposed assumption and assignment of the Telecast Agreement and PPIA.

29. ESPN may consent to a proposed assignment of the Telecast Agreement and the PPIA. As of now, however, no buyer-assignee has been identified. Accordingly, it is impossible for ESPN to evaluate at this time whether it will consent to the assignment of its agreement (or withhold such consent). ESPN reserves the right to condition its consent as it deems appropriate.

WHEREFORE, ESPN asserts this Limited Objection and reservation of rights with respect to the Notice.

Dated: New York, New York
June 30, 2020

Respectfully submitted,

/s/ *Robert D. Gordon*
JENNER & BLOCK LLP
Robert D. Gordon (*pro hac vice* forthcoming)
Marc Hankin (*pro hac vice* forthcoming)
Carl N. Wedoff (*pro hac vice* forthcoming)
919 Third Avenue
New York, New York 10022
(212) 891-1600
rgordon@jenner.com
mhankin@jenner.com
cwedoff@jenner.com

Todd C. Toral
633 West 5th Street
Suite 3600
Los Angeles, California 90071-2054
(213) 239-5100
ttoral@jenner.com

*Counsel for ESPN, Inc.*