**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ALPHA ENTERTAINMENT LLC,[1]<br><br>Debtor. | Chapter 11<br>Case No. 20-10940 (LSS)<br><br>**Objection Deadline: August 3, 2020, at 4:00 p.m. (ET)**<br>**(as extended as to Committee by consent)**<br>Hearing Date: August 7, 2020, at 10:00 a.m. (ET)<br><br>Relating Docket Nos. 55, 181, 326 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALPHA ENTERTAINMENT LLC TO THE DEBTOR'S MOTION FOR ENTRY OF (A) AN ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (II) SCHEDULING AN AUCTION FOR AND HEARING TO APPROVE THE SALE; (III) APPROVING NOTICE OF RESPECTIVE DATE, TIME AND PLACE FOR AUCTION AND FOR HEARING ON APPROVAL OF SALE; (IV) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (V) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (VI) GRANTING RELATED RELIEF; AND (B) AN ORDER AUTHORIZING AND APPROVING (I) THE SALE FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS; AND (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES AND (III) RELATED RELIEF</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 case of Alpha Entertainment LLC, the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>"), files this objection (the "<u>Objection</u>") to the *Debtor's Motion for Entry of (A) an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets; (II) Scheduling an Auction for and Hearing to Approve the Sale; (III) Approving Notice of Respective Date, Time and Place for Auction and for Hearing on Approval of Sale; (IV) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (V) Approving Form and Manner of Notice Thereof; and (VI) Granting Related*

---

[1] The last four digits of the Debtor's federal tax identification number are 7778. The Debtor's mailing address is 1266 East Main St., Stamford, CT 06902.

*Relief; and (B) an Order Authorizing and Approving (I) the Sale Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests; and (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (III) Related Relief* [Docket No. 55] (the "<u>Sale Motion</u>").[2]  In support of its Objection, the Committee states as follows:

## PRELIMINARY STATEMENT[3]

1.     While the Committee has been and remains supportive of a competitive sale process run by the Debtor that attracted a qualifying bid from the Proposed Buyer, the Debtor's role as a fiduciary to the estate and its constituents does not end with securing that offer.  Rather, the Debtor has an ongoing obligation to negotiate terms with the Proposed Buyer that are most favorable to the estate and do not unduly prejudice its creditors.  The proposed APA, however, does not reflect such terms and seeks to strip the estate of valuable assets for no consideration.  As such, the Committee has significant concerns that the Sale contemplated with the Proposed Buyer does not satisfy the sound business purpose test, and is not in the best interests of the Debtor's estate.

2.     The primary objective of selling assets in a bankruptcy proceeding is to maximize an estate's value and recoveries for the debtor's constituents.  The Committee, however, cannot reasonably determine whether that objective has been achieved in connection with the Sale to the Proposed Buyer given the Debtor's failure to value significant assets that are now being included in the Sale, but were not contemplated as part of the assets to be purchased in the form asset purchase agreement prepared by the Debtor.  More specifically, the APA that the Debtor now seeks to have the Court approve contemplates the sale of, among other assets, *all* claims and causes

---

[2] Capitalized but undefined terms in this Objection shall have the same meanings as ascribed to them in the Sale Motion or the APA (as defined below), as applicable.

[3] Capitalized but undefined terms in this Preliminary Statement shall have the same meanings as ascribed to them in this Objection.

2

of action of the Debtor against any person (the "Causes of Action"), including all claims against statutory insiders (the "Insider Claims") and chapter 5 causes of action ("Avoidance Actions"). Moreover, because the Purchased Claims were expressly excluded from the Purchased Assets in the form asset purchase agreement prepared by the Debtor, parties in interest had no reasonable expectation from the Sale Motion or Bidding Procedures Order that a sale of the Debtor's assets would include a sale of all Causes of Actions, Avoidance Actions and Insider Claims, among others.

3. Based on the Debtor's *Statement of Financial Affairs* [Docket No. 195] ("SOFA"), and without considering any other claims and causes of action that may exist, the Debtor made transfers in excess of *$49 million*[4] within 90 days of the Petition Date and an additional *$12 million* in transfers to statutory insiders within 1-year of the Petition Date. Yet, the Debtor has altogether failed to perform any analysis or valuation of the Causes of Action, including Insider Claims and Avoidance Actions, which are traditionally a valuable source of recovery for unsecured creditors. Without any analysis as to the value of the sweeping Purchased Claims, neither the Committee nor this Court can determine whether the $15 million purchase price for the Purchased Assets provides reasonable value to the Debtor's estate.[5] The Court should not countenance a process that permits assets that could yield a significant recovery for the estate to slip away without being valued at all by the Debtor and where the Debtor cannot establish that any effort has been made to maximize the Purchased Claims for the benefit of the Debtor's estate.

---

[4] This figure excludes ~$34.25 million in transfers to ADP on account of payroll wires.

[5] As noted below, the $15 million purchase price is made somewhat illusory by the approximately $1.8 million in accounts receivable that the Proposed Buyer is acquiring as part of the Purchased Assets and the cure cost reductions and other adjustments that could shift significant costs back to the Debtor's estate and effectively further reduce the Purchase Price.

4. Accordingly, while the Committee generally supports a sale to the Buyer—on terms modified to account for the value associated with the Purchased Claims or to remove the Purchased Claims from the Purchased Assets and that addresses its other comments to the APA—the terms of the transaction as currently proposed are objectionable, as they are not in the best interests of the estate, would surrender critical sources of recovery for unsecured creditors and are generally inconsistent with market standards.[6]

## RELEVANT BACKGROUND

**A.    General Background.**

5. On April 13, 2020 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued to operate and manage its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's bankruptcy case.

6. On April 23, 2020, the United States Trustee appointed the Committee.

**B.    The Sale Motion.**

7. On April 21, 2020, the Debtor filed the Sale Motion. Through the Sale Motion, the Debtor seeks the entry of an order (the "<u>Sale Order</u>"), (i) authorizing the Sale free and clear of all liens, claims, interests, and encumbrances (except for any permitted liens and encumbrances), (ii) authorizing the assumption and assignment of the Designated Contracts, and (iii) granting related relief. The Sale Motion never contemplated a sale of the Debtor's Causes of Action and other claims, and certainly did not identify the potential value associated with the Purchased Claims that are now being included within the proposed Sale.

---

[6] This Objection is filed to preserve the Committee's right to submit these issues to the Court, including objections for the form of Sale Order, for adjudication if they cannot be resolved prior to the Sale Hearing. In the interim, the Committee will continue to engage in good faith negotiations with the Debtor and Proposed Buyer regarding the objections raised herein in an effort to resolve the issues consensually.

8.  On May 28, 2020, the Court entered an *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets; (II) Scheduling an Auction for and Hearing to Approve the Sale; (III) Approving Notice of Respective Date, Time and Place for Auction and for Hearing on Approval of Sale; (IV) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (V) Approving Form and Manner of Notice Thereof; and (VI) Granting Related Relief* [Docket No. 181] (the "Bidding Procedures Order").  Pursuant to the Bidding Procedures Order, a hearing (the "Sale Hearing") to consider approval of the Sale and entry of the proposed Sale Order is scheduled for August 7, 2020 at 10:00 a.m. (ET).

9.  On July 24, 2020, in accordance with the Bidding Procedures Order, the Debtor submitted the proposed Sale Order by way of the *Notice of Filing of Proposed Sale Order* [Docket No. 326].  The Debtor intends to seek entry of the proposed Sale Order at the Sale Hearing.

**C.    The Sale Process.**

10.  On July 30, 2020, just before the Bid Deadline, Alpha Acquico, LLC ("Proposed Buyer"), submitted its bid along with an Asset Purchase Agreement (the "APA") reflecting a $15 million purchase price and a definition of Purchased Assets that includes Purchased Claims, which includes, among other claims, all Causes of Action of the Debtor.  *See* APA, ¶ 2.1.  While the Debtor has generally consulted with the Committee throughout the sale process, the Committee only first become aware of the Proposed Buyer's intent to acquire the Purchased Claims on the evening of July 30, 2020.

11.  On August 3, 2020, the Debtor filed a Notice with the Court canceling the Auction and identifying the Proposed Buyer as the Successful Bidder.  [Docket No. 338].

**OBJECTION**

**A.     The Contemplated Sale to the Proposed Buyer does Not Satisfy the Sound Business Purpose Test.**

12.     Although the Debtor is entitled to deference in seeking approval of the proposed Sale, such deference is not without limits.  In determining whether to authorize the use, sale, or lease of property of the estates under section 363(b), the Debtor has the burden of establishing a sound business purpose.  *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holdings, Corp., et al. (In re Montgomery Ward Holding Corp., et al.)*, 242 B.R. 147, 153 (D. Del. 1999).

13.     As currently structured, and without more, the Debtor cannot establish that there is a sound business propose for the Sale or that it is in the best interest of the estate.  The Debtor is seeking to sell significant Causes of Action that have not been specifically identified or valued.  The APA also includes certain purchase price adjustments and payment obligations that may materially alter the consideration ultimately paid by the Proposed Buyer.  In its current form, the APA contemplates a sale that fails to adequately disclose the nature of the Purchased Claims and could—depending primarily on the value of the Purchased Claims, the approximately $1.8 million in accounts receivable being acquired and certain other contemplated adjustments—result in a net

loss to the Debtor's estate. While the Committee believes that the Sale deficiencies can be rectified, the Sale as currently proposed fails to satisfy the sound business purpose standard.

14. With a base purchase price of $15 million, if the value of the Purchased Claims, purchase price adjustments and Debtor payment obligations exceed $15 million, then the Debtor will in effect be getting *no value* for the sale of its assets. Despite the Committee's requests, neither the Debtor nor the Proposed Buyer has quantified the Purchased Claims, adjustments and obligations, creating uncertainty as to whether the Sale is in the best interest of the Debtor's estate and its creditors. *In re Lahijani*, 325 B.R. 282, 288 (9th Cir. B.A.P. 2005) (Debtor must "assure that optimal value is realized by the estate under the circumstances").

15. The sound business purpose test has four requirements that a debtor must prove: (1) a sound business purpose for the sale; (2) a fair sale price; (3) adequate and reasonable notice; and (4) good faith on behalf of the purchaser. *See In re Summit Global Logistics, Inc., et al.*, No. 08-11566, 2008 WL 819934 at *9 (Bankr. D.N.J. Mar. 26, 2008) (internal citations omitted); *Titusville Country Club v. Pennbank, et al. (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991) (internal citations omitted). Until the Debtor quantifies the Purchased Claims, purchase price adjustments and payment obligations, and demonstrates that the Sale will not leave the estate in a position less favorable than if the Sale had not occurred, the Debtor cannot satisfy its burden of establishing a sound business purpose for the Sale.

16. Courts in the Third Circuit have consistently held that to determine whether a sale is supported by a sound business purpose, courts "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors, and equity holders alike." *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Montgomery Ward*, 242 B.R. at 153 (quoting and adopting *In re*

*Lionel Corp.*, 722 F.2d at 1071). In making this assessment, the Court may look to factors such as: (i) the effect of the proposed disposition on a future plan; and (ii) the "proceeds to be obtained from the sale versus the appraised values of the property." *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *see also Montgomery Ward*, 242 B.R. at 153–54. Ultimately, a court should not "blindly follow the hue and cry of the most vocal special interest groups." *Montgomery Ward*, 242 B.R. at 153 (quoting *In re Lionel Corp.*, 722 F.2d at 1071).

17.   To satisy its burden, the Debtor must disclose additional detail surrounding the Purchased Claims and either quantify or limit the scope of the Purchased Claims, the purchase price reductions and payment obligations under the APA prior to approval of the Sale.

**B.   The APA Must Be Modified to Remove the Causes of Action as "Purchased Assets".**

18.   The form of APA executed by the Proposed Buyer includes among the "Purchased Assets" all Causes of Action belonging to the Debtor. Specifically, the APA provides that the Proposed Buyer is purchasing:

> all Claims, refunds, rights of recovery, rights of set-off, rights of recoupment, and related sums and fees, including all claims, rights, lawsuits, rights of recovery, objections, causes of action, avoidance actions and similar rights of the Debtor arising under or pursuable through Chapter 5 of the Bankruptcy Code whether or not asserted as of the Closing Date) and all proceeds thereof.

(collectively, the "Purchased Claims"). APA § 2.1. Neither the Debtor, the Proposed Buyer nor the APA identify the value being apportioned to these Purchased Claims and the Committee only first became aware of the Proposed Buyer's intent to acquire the Purchased Claims on the evening of July 30, 2020. The significance of this insertion by the Proposed Buyer—which was not included in the form APA prepared by the Debtor—cannot be overstated where the Debtor's SOFA reflects over *$60 million* of potentially avoidable and recoverable transfers made by the Debtor during the 90-day and 1-year periods proceeding the bankruptcy filing. In addition, the Purchased

Claims appear to include non-avoidance claims that the Debtor's estate may have against, among others, insiders,[7] including breach of fiduciary duty and other potentially valuable claims.

19. Equally imprudent is the inclusion of setoff and recoupment claims within the Purchased Claims and part of the Purchased Assets when the deadline to file proofs of claim against the Debtor's estate is not until August 18, 2020.[8] Simply put, until the claims deadline passes, the Debtor is not in a position to accurately determine the value associated with any such claims.

20. Despite the significance of these potential estate claims (and the inability to even evaluate at this time the setoff and recoupment claims), the Debtor has made no effort to value the Purchased Claims and to weigh that value against the $15 million Purchase Price being offered by the Proposed Buyer.[9] Without any analysis as to the value of the Purchased Claims, the Debtor cannot genuinely represent that the Sale is in the best interests of its estate and neither the Court nor the Committee can determine whether there is a sound business purpose for the sale.

I. *The Avoidance Actions should be Excluded from the Sale.*

21. The sale of Avoidance Actions or proceeds thereof should not be permitted. In including such assets as part of the Purchased Assets, the Proposed Buyer is seeking ownership of assets of the Debtor that are unquestionably not encumbered, the proceeds of which may be used to secure a recovery for unsecured creditors.

---

[7] As set forth in the Committee's DIP Objection [Docket No. 147], the Committee believes that claims may exist against the Debtor's principal, Vincent McMahon ("McMahon"), and other insiders. The Debtor admits that it has not performed an analysis of or valued such claims. Moreover, there are issues surrounding McMahon's purported secured claim, and the perfection thereof, that require further investigation and should not in effect be "released" as part of the proposed Sale.

[8] The Committee does not oppose the sale of setoff or recoupment rights associated with contracts that are assumed and assigned to the Proposed Buyer.

[9] As noted above, and without even considering purchase price adjustments, the included with the Purchase Price is the acquisition of $1.8 million of accounts receivable, which the Committee understands is largely collectible. As a result, the net purchase price is actually closer to $13.2 million.

22. The sale of Avoidance Actions without any evaluation of their underlying value is fundamentally at odds with the unique purposes served by avoidance actions. Avoidance actions are distinct creatures of bankruptcy law designed to benefit, and ensure equality of distribution among, general unsecured creditors. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 244 (3d Cir. 2000), *rev'd en banc*, 330 F.3d 548 (3d Cir. 2003) (identifying underlying intent of avoidance powers to recover valuable assets for estate's benefit); *In re Tribune Co.*, 464 B.R. 126, 171 (Bankr. D. Del. 2011) (noting "that case law permits all unsecured creditors to benefit from avoidance action recoveries").

23. Allowing the Debtor to proceed with the proposed sale of Avoidance Actions without any further analysis as to the value of the Avoidance Action—and without the Proposed Buyer paying a premium for these claims—would prejudice unsecured creditors. *See Silverman v. Birdsell*, 796 Fed. Appx. 935, 937 (9th Cir. 2020) ("Nothing [] precludes transferring the trustee's avoidance powers to a self-interested party that will abandon those claims, *so long as the overall value obtained for the transfer is appropriate.*") (emphasis added). The Sale of the Avoidance Actions for less than fair value would leave unsecured creditors without a significant source of recovery from the Debtor, and would provide the Proposed Buyer with substantially more than it should otherwise be entitled. For this reason alone, the APA must be modified and the Sale cannot proceed in its current form.

II. *The Insider Claims should be Excluded from the Sale.*

24. For reasons not readily apparent to the Committee, the Proposed Buyer is intent on purchasing anything that may resemble a claim belonging to the Debtor's estate and yet has failed to assign any value to such claims. *See* APA §§ 2.1. While the Committee may understand the Proposed Buyer's desire to purchase and thereby resolve a limited subset of potential claims, the

Committee is at a loss with respect to claims that the Debtor may have against insiders. As noted above and in other filings with this Court, the Committee has identified substantial potential causes of action against insiders, including millions of dollars in payments made within the 1-year insider preference period, questionable loan transactions within the days and weeks leading up to the bankruptcy and questionable actions and decisions made by certain insiders of the Debtor. These claims may have very real value to the Debtor's estate—and to the unsecured creditors that were prejudiced by the insider conduct prior to the filing of this case and that will be further impaired if the Sale includes the insider claims—and, if retained by the estate, could form a significant source of recovery for the Debtor's many aggrieved creditors.

25. Indeed, by continuing to demand that insider claims be included as part of the Purchased Assets, the Proposed Buyer is in effect seeking to procure non-consensual insider releases for McMahon and others insider against whom the Debtor may have claims. The significance of these "insider releases" is illustrated by a $5 million payment made by the Debtor to Raine Advisors LLC during the preference period and on which payment McMahon was jointly liable. If the Sale is approved without modification, McMahon would in effect be released from the prospect of significant liability to Raine Advisors LLC in connection with any amounts that may be avoided and recovered from Raine Advisors LLC.

26. The prospect of insiders receiving releases is also troubling to the Committee where neither McMahon nor any other insider of the Debtor would come close to meeting the requirements in the Third Circuit to obtain a non-consensual release in connection with a chapter 11 plan. *See generally In re United Artists Theaters*, 315 F.3d 217 (3d Cir. 2003) (listing factors to be considered in approving a non-debtor release). Accordingly, where McMahon and other

insiders would not be entitled to obtain non-consensual releases through the chapter 11 plan process they should not be entitled to secure such releases for no value through a third-party sale.[10]

27.     It is crucial that the Debtor perform an analysis to determine whether the value of each of the assets included in the Sale is truly maximized. Unless and until a thorough review and analysis of the value of the Purchased Claims is completed—or the Proposed Buyer removes the Purchased Claims from the Sale or provides additional consideration to support their purchase—unsecured creditors will be unduly prejudiced by the contemplated Sale. Accordingly, the Committee objects to the Sale as currently proposed under the terms of the APA.

C.     **Additional Concerns Regarding the APA.**

28.     In addition to the foregoing concerns, the following provisions of the APA are objectionable to the Committee for the reasons stated below:

| **Issue** | **Section(s)** | **Comments** |
|---|---|---|
| **Definition of Material Adverse Effect ("MAE")** | Article 1 | Proposed Buyer has significantly expanded the definition of MAE. The definition of MAE should be pared back consistent with form APA prepared by the Debtor. |
| **Cure Claims** | § 2.9, Schedule 2.9 | The Debtor—and by extension the unsecured creditors—should not bear the risk of cure costs exceeding the amounts on Schedule 2.9 or otherwise exceeding any cap. The Proposed Buyer should be responsible for all cure costs, regardless of total cure cost. |
| **Conditions to Obligations of Buyer–"Material Adverse Effect" ("MAE")** | § 7.2 | Proposed Buyer's closing conditions require that no MAE has occurred or has been discovered (since signing APA) with respect to the Debtor, its business or the Purchased Assets. Given the nature of the transaction, |

---

[10] While the Committee has no evidence to support that the Proposed Buyer is affiliated with McMahon or the WWE (other than certain well-known affiliations between a member of the Proposed Buyer and McMahon/WWE), the Proposed Buyer's insistence that the Sale include the acquisition of insider claims raises significant concerns and questions about the connections or intentions of the Proposed Buyer vis-à-vis McMahon and the WWE.

12

| **Issue** | **Section(s)** | **Comments** |
|---|---|---|
| | | this closing condition is improper and should be removed. |

**D.     Revisions to APA and Sale Order.**

29.     The Committee has provided the Debtor and the Proposed Buyer with its comments and revisions to the APA to reflect changes addressing the matters discussed in this Objection. To the extent the parties cannot agree on appropriate modifications, the Committee will file a redlined version of, or an objection to, the Sale Order (and possibly the APA) with the Court in advance of the Sale Hearing.

## RESERVATION OF RIGHTS

30.     The Committee and its professionals reserve the right to amend, supplement, and modify this Objection, including by filing a declaration in support thereof, seeking discovery, introducing evidence at any hearing(s) relating to this Objection and the Sale, providing revisions and objections to the proposed form of Sale Order and raising additional objections.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Committee respectfully requests that the Court enter an order (i) sustaining this Objection, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       August 3, 2020

**GREENBERG TRAURIG, LLP**

By: */s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar. No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7395
Facsimile: (302) 661-7165
Email: melorod@gtlaw.com

– and –

Shari L. Heyen (admitted *pro hac vice*)
1000 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: heyens@gtlaw.com

– and –

David B. Kurzweil (admitted *pro hac vice*)
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212
Email: kurzweild@gtlaw.com

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALPHA ENTERTAINMENT LLC**