# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ALPHA ENTERTAINMENT LLC, | Case No. 20-10940 (LSS) |
| Debtor. | **Re: Docket No. 712** |

### DECLARATION OF CHIRAG MITHANI IN SUPPORT OF PLAN ADMINISTRATOR'S OBJECTION TO MOTION TO ALLOW ADMINISTRATIVE CLAIM OF WORKDAY, INC.

I, Chirag Mithani, declare as follows:

1. I am over 18 years of age and am presently employed as a Senior Director of Finance with the XFL, which was purchased by Alpha Acquico, LLC through the above captioned bankruptcy proceeding. Prior to the acquisition, I was employed by the above-captioned debtor Alpha Entertainment LLC (the "Debtor") during all relevant times relating hereto and I have personal knowledge of the facts stated herein and could and would testify thereto if called as a witness.

2. Effective as of June 19, 2018, Debtor and Workday, Inc. ("Workday") entered into a Master Subscription Agreement (the "MSA"). A true and copy of the MSA is attached hereto as Exhibit A. Pursuant to the MSA, Workday provided certain human capital management software and related services to the Debtor. As provided in the corresponding Order Form relating to the MSA, the term of the agreement was 36 months for a total fee of $750,000. A true and correct copy of Order Form #00152878.0 is attached as Exhibit B.

3. In May of 2019, the Debtor provided an internal summary of the Workday three year contract which provided a committed spend of $250k/year. A true and correct copy of the XFL/Workday power point is attached as Exhibit C. It also provided that payroll and financial

13290194

services will not be using Workday despite Workday continuing to charge for these services in the MSA and corresponding Work Orders. For example, Order Form # 00192958.0, effective as of August 23, 2019, in the total amount of $34,216 provided for Cloud Connect for Third Party Payroll. A true and correct copy of Order Form #00192958.0 is attached hereto as Exhibit D. Effective September 8, 2019, Workday and the Debtor entered into an order for "Deployment Tenant" services for a period of a total of $6,000. A true and correct copy of Order Form #00196462.0 is attached hereto as Exhibit E.

4. While the Debtor frequently accessed and used Workday's platform prior to the April 13, 2020 bankruptcy filing (the "Petition Date") when they had over 1,000 employees and operated a robust business, the Debtor's use of Workday's software post-petition was very different.

5. Post-petition, the Debtor was no longer operating an active business – the XFL football league had been shuttered and almost all employees terminated. Post-petition the employees were limited to approximately 18 employees. The Debtor no longer had a need for Workday services and tools relating to hiring staff, benefits management and time tracking, etc. Instead, the Debtor used the Workday software for the limited purposes of accessing employment information and downloading Affordable Care Act ("ACA") data. Following the Sale, the Debtor retained no employees.

6. In May 2020, after the Debtor ceased league operations and just three months prior to the close of the sale of substantially all of the Debtor's assets to Alpha Acquico, LLC (the "Sale"), Workday invoiced the Debtor in the amount of $252,499.98 for an "Enterprise Cloud Application Subscription Fee."

7. On July 29, 2020 – just one week prior to the Court approving the Sale – Workday invoiced the Debtor in the amount of $14,810.64 for another "Enterprise Cloud Application Subscription Fee."

8. Finally, on June 16, 2020, Workday invoiced Alpha yet again, but this time in the amount of $6,060.00 for services described as "Deployment Tenant." Workday, thereafter, filed a subsequent invoice that adjusted a $6,000.00 'deployment' invoice relating to Order Form 196462 to $0.00 for the period from June 16, 2020 to September 15, 2020. A true and correct copy of Invoice Number WD-175474 is attached hereto as <u>Exhibit F</u>.

9. Based on the review of the Debtor's records, the Debtor accessed the Workday platform on a limited basis post-petition to run reports and did not use or get any value from the broad array of other services for which Workday was continuing to charge the Debtor.

10. Workday was aware of the Debtor's bankruptcy filing, as evidenced by the emails between the parties in July 2020, and the significant reduction in work force implemented by the Debtor pre-petition and the Sale. A true and correct copy of those emails with the bankruptcy petition attached is attached hereto as <u>Exhibit G</u>. More specifically, the Debtor informed Workday on more than one occasion of its changed circumstances and that a full year contract was not needed. Indeed, the filing of the bankruptcy triggered the termination of the MSA and Workday agreed to this without regard to discussion of payment.

11. The Debtor's access to the Workday platform and the use of Workday's service became even more remote following the Sale in August 2020. At that time, the Debtor had no remaining employees. Only after Alpha Acquico, LLC elected not to use Workday going forward following the sale did Workday assert its request for an administrative expense.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th day of December, 2021, at Demarest, New Jersey.

*/s/ Chirag Mithani*
Chirag Mithani