**EXHIBIT 2**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
:
In re                              :    Chapter 11
:
ALPHA ENTERTAINMENT LLC,           :    Case No. 20-10940 (LSS)
:
Debtor.[1]                         :
:    Ref. Docket No. 403
---------------------------------------------------------x

### ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, AUTHORIZING THE DEBTOR TO ENTER INTO A TRANSITION SERVICES AGREEMENT WITH ALPHA OPCO, LLC

Upon consideration of the motion (the "*Motion*")[2] of the above-captioned debtor and debtor in possession (the "*Debtor*"), for entry of an order pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "*Bankruptcy Code*"), authorizing the Debtor to enter into a Transition Services Agreement with Alpha Opco, LLC (the "*Agreement*"), substantially in the form attached as Exhibit 1 hereto; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157 and the Court may enter a final order consistent with Article III of the United States Constitution; and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

---

[1] The last four digits of the Debtor's federal tax identification number are 7778. The Debtor's mailing address is 1266 East Main St., Stamford, CT 06902.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

26993921.3

2

1. The Motion is GRANTED as set forth herein.

2. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor is authorized to enter into and perform in accordance with the Agreement.

3. The Debtor and its officers, employees and agents are authorized to take, or refrain from taking, any and all such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

4. Notwithstanding the provisions of Bankruptcy Rule 6004 or any other applicable Bankruptcy Rule, this Order shall not be stayed for fourteen days after the entry hereof but shall be effective and enforceable immediately upon entry, and the fourteen-day stay provided in such rule is hereby expressly waived and shall not apply.

5. This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Order.

*[Signature]*

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: October 1st, 2020**
**Wilmington, Delaware**

26993921.3

# **EXHIBIT 1**

**Transition Services Agreement**

26993921.3

# TRANSITION SERVICES AGREEMENT

This **TRANSITION SERVICES AGREEMENT** (this "Agreement") is made and entered into as of September [•], 2020, by and between Alpha Entertainment LLC, a Delaware limited liability ("Seller"), and Alpha Opco, LLC, a Delaware limited liability company ("Buyer").  Each of Seller and Buyer is referred to herein as a "Party" and together as the "Parties."  Notwithstanding anything to the contrary in this Agreement, this Agreement shall only become binding and effective upon the Parties on the first date on which the Bankruptcy Court (as defined below) shall have entered an order approving this Agreement and such order shall have become final and non-appealable (the "Effective Date").  Capitalized terms used but not defined herein shall have the meaning set forth in the Asset Purchase Agreement (as defined below).

**WHEREAS**, Seller commenced a voluntary case (the "Seller Chapter 11 Case") for reorganization under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 13, 2020;

**WHEREAS**, pursuant to that certain Asset Purchase Agreement, dated as of August 17, 2020 (as amended as of the date hereof, the "Asset Purchase Agreement"), by and between the Parties, Buyer acquired substantially all of the assets of Seller pursuant to sections 105, 363, and 365 of the Bankruptcy Code; and

**WHEREAS**, Buyer has agreed that Buyer shall provide, or cause to be provided, to Seller certain services set forth on Exhibit A attached hereto to support Seller in administering its bankruptcy estate in accordance with the Seller Chapter 11 Case (the "Services"), and Seller and Buyer intend to set forth the definitive terms of such arrangements herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I
## AGREEMENT TO PROVIDE AND ACCEPT SERVICES; GOVERNANCE

1.1   Appointment and Provision of Services.  Seller hereby appoints Buyer as of the Effective Date to provide, and as of the Effective Date Buyer shall provide, the Services to Seller for the Fees (as hereinafter defined) and on the terms and subject to the conditions set forth in this Agreement (including, without limitation, Section 1.2(b) and on Exhibit A and Exhibit B hereto).  Buyer shall carry out the Services with reasonable skill and diligence, and in a timely, workman-like and professional manner in accordance with applicable law, rule, regulation, or court order.

1.2   Conditions.

(a)   Cooperation.  Seller shall cooperate with the Buyer as is reasonably necessary for Buyer to carry out the applicable Services, including providing such access to systems, networks, data, and other confidential information as is reasonably necessary in connection with the provision of such Services, and shall use commercially reasonable efforts

27086099.2

to comply with all deadlines related to such Services.  Notwithstanding anything to the contrary in this Agreement, Seller understands and agrees that Buyer is not in the business of providing transition services to third parties, and under no circumstances shall Buyer be liable under this Agreement for any action or omission unless such action or omission is the direct result of fraud, gross negligence, or willful misconduct by Buyer in connection with this Agreement.

(b) Required Consents.  The Parties shall use commercially reasonable efforts to obtain any waiver, permit, consent, license, or sublicense that Buyer believes is necessary for the performance or receipt of any Service or otherwise to allow such third party's service or product to be utilized by Seller in connection with the applicable Services (each, a "Third-Party Consent"); provided, that Seller shall reimburse Buyer for any fees, costs, or charges payable to a third party in connection with granting such Third-Party Consent.  If the Parties are unable to obtain any such consent prior to the date the relevant Services requiring such consent are otherwise due to be performed, then Buyer shall not be obligated to provide the relevant Services unless and until the relevant Third-Party Consent is obtained.  In the event that the Parties are unable to obtain any such consent, the Parties shall cooperate in good faith to determine whether there is another commercially reasonable way that Buyer could provide the same or similar service that does not require such consent.

(c) Personnel.  All employees and representatives of Buyer shall be deemed for all purposes (including compensation and employee benefits) to be employees or representatives solely of Buyer and not to be employees, representatives, or independent contractors of Seller.  In performing their respective duties hereunder, all such employees and representatives of Buyer shall be under the direction, control, and supervision of Buyer (and not of Seller), and Buyer shall have the sole right to exercise all authority with respect to the employment (including termination of employment), assignment, and compensation of such employees and representatives.

(d) Other Limitations.  Buyer shall not be obligated to provide, or cause to be provided, any Service (i) in a volume or quantity or at a level of service that exceeds the volumes, quantities, or levels of the services provided to the business by Seller during the Bankruptcy Case, or, for those services not provided to the business by Seller during the Bankruptcy Case, in a volume or quantity or at a level of service that exceeds the services provided to the business in Seller's Ordinary Course during the twelve (12) month period prior to the Petition Date, (ii) if the Service to be provided would materially interfere with the conduct of Buyer's business or operations, (iii) in a jurisdiction where a license or permit from a Governmental Authority is required to perform the applicable Service in such jurisdiction and Buyer does not hold such license or permit, or (iv) if the Service to be provided requires instructions, data, information, or access from Seller or is dependent in whole or in part on completion of prior acts by Seller, and Seller has not provided such instructions, data, information, or access or completed the requisite prior acts.

## ARTICLE II
## COMPENSATION FOR SERVICES

2.1 Fees.

(a) The fees for the Services that will be performed by Buyer personnel will be charged on an hourly basis at the hourly rates set forth in Exhibit B (the "Fees").

27086099.2

2

(b)     Both Parties agree that, in addition to the Fees, the Seller shall also reimburse the Buyer for all of Buyer's reasonable and documented out-of-pocket costs and expenses (including all pass-through costs and expenses for Services provided by World Wrestling Entertainment, Inc.) other than Fees in connection with the provision of the Services.

(c)     Notwithstanding anything to the contrary herein, no Fees shall be payable by Seller for the preparation of reconciliation reports or invoices with respect to Buyer's payment of the costs associated with Designation Rights Assets pursuant to Section 2.5(a)(i) of the Asset Purchase Agreement.

2.2     Invoicing and Payment.

(a)     Buyer shall deliver to Seller and the Official Committee of Unsecured Creditors appointed in the Seller Chapter 11 Case (the "Committee"), on a weekly basis, an invoice for the Fees and reimbursable costs and expenses associated with the Services for the previous week (the "Weekly Invoice"), which Weekly Invoice shall provide in reasonable detail such data and documentation supporting the calculation of any Fees and reimbursable expenses set forth therein, including an itemized list showing hours billed per individual per day.

(b)     If Seller or the Committee disputes any portion of a Weekly Invoice, such dispute shall be raised on or before five (5) business days of receipt of the Weekly Invoice (the "Objection Deadline").  In the event any dispute is not resolved prior to the expiration of the Objection Deadline, the dispute resolution provisions in Section 8.5 herein shall apply. Buyer shall continue performing the applicable Services in accordance with this Agreement pending resolution of any dispute.

(c)     Seller shall pay to Buyer the undisputed portion of any Fees and reimbursable expenses set forth on each Weekly Invoice on or before five (5) business days after the Objection Deadline.

## ARTICLE III
## INTELLECTUAL PROPERTY

3.1     Ownership of Intellectual Property.  Except as otherwise agreed by the Parties, each Party shall retain all right, title, and interest in and to their respective intellectual property rights, and no other license (other than to the extent necessary for the provision or the receipt of the Services) or other right, express or implied, is granted hereunder by either Party or its Affiliates to its intellectual property rights.

3.2     Reservation of Rights.  Except as expressly provided in this Agreement, no Party shall by virtue of this Agreement or the performance of obligations hereunder have any rights or licenses with respect to any software, hardware or facility of the other Party. All rights and licenses not expressly granted in this Agreement are expressly reserved by the relevant Party.

27086099.2

## ARTICLE IV
## CONFIDENTIAL INFORMATION

For purposes of this Agreement, "Confidential Information" shall mean any information received by Seller or any of its representatives (the "Receiving Party") in the performance of this Agreement, including, methods of operation, customers, customer lists, products, prices, fees, costs, technology, inventions, trade secrets, know-how, software, marketing methods, plans, personnel, suppliers, competitors, markets, or other specialized information or proprietary matters; provided, however, "Confidential Information" does not include, and there shall be no obligation hereunder with respect to, information that (a) is already in the possession of the Receiving Party prior to it being furnished by Buyer, provided that the Receiving Party does not know that such information is the subject of another confidentiality agreement with, or other contractual, legal, or fiduciary obligation of secrecy to, Buyer or another party, (b) from or after the date such information becomes generally available to the public (in each case, other than as a result of a disclosure by the Receiving Party in breach of this Agreement), (c) from or after the date such information becomes available to the Receiving Party on a non-confidential basis from a source other than Buyer, provided that the Receiving Party does not know that such source is bound by a confidentiality agreement with, or other contractual, legal, or fiduciary obligation of secrecy to, the Buyer or any other party, or (d) from or after the date such information becomes independently developed by the Receiving Party without use of, or reference to, any Confidential Information. During the Term and for a period of five (5) years thereafter, each Receiving Party shall and shall cause its Affiliates and representatives to keep confidential all of Buyer's Confidential Information provided to it by or on behalf of Buyer or otherwise obtained by it in connection with either or both this Agreement and any of the transactions contemplated by it. Notwithstanding the foregoing, if any Receiving Party or its officers, directors, employees, or affiliates are required by applicable Law or judicial order to disclose or receive a request to disclose all or any part of the Confidential Information under the terms of a valid and effective subpoena or other request issued by a court of competent jurisdiction or a governmental, regulatory, or supervisory authority or body, such Receiving Party, to the extent legally permitted, agrees to (x) notify the Buyer as promptly as practicable of the existence, terms of and circumstances surrounding such requirement or request, (y) consult with Buyer regarding legally available steps to resist or narrow such requirement or request so that Buyer can pursue (with the Receiving Party's reasonable cooperation) any such steps at Buyer's sole cost and expense, and (z) if, in the opinion of the Receiving Party's outside legal counsel, disclosure of such information is legally required, disclose only such portion of Buyer's Confidential Information which such counsel advises the Receiving Party is legally required to be disclosed. At the written request of Buyer, upon termination or expiration of a Service or this Agreement, the Receiving Party will promptly, and no later than fifteen (15) days after such termination or expiration, return to Buyer or destroy (at Receiving Party's option) any Confidential Information of Buyer (including any books, records, files, databases, or computer software or hardware owned or leased by Buyer) used in connection with the provision of the terminated or expired Service(s) and not used in connection with the provision of any non-terminated or non-expired Service (the "Materials"); provided that notwithstanding the foregoing, such Receiving Party will be permitted to retain one (1) copy of such Materials in a confidential manner in the files of its legal counsel (and which shall not be accessed other than by legal counsel) solely for the purposes of and to the extent required for establishing compliance with any applicable Laws or regulations and for defending or maintaining any litigation (including any administrative proceeding) relating to this Agreement or the Materials.

27086099.2

## ARTICLE V
## TERM AND TERMINATION

5.1     Term.  The term of this Agreement shall begin on the Effective Date and shall remain in full force and effect, unless sooner terminated pursuant to Section 5.2, until the earlier of (a) three (3) months following the Effective Date and (b) the completion of the Services (the "Term").  Notwithstanding the foregoing, (a) the expiration of or termination of the Term of this Agreement shall not relieve Seller of its obligations to pay all Fees and expenses accrued as of such expiration or termination of the Term, and (b) Buyer's obligation to perform any Service shall terminate upon the completion of such Service as set forth in Exhibit A.

5.2     Termination.

(a)     Notwithstanding anything to the contrary in Section 5.1, Seller may terminate any Service upon ten (10) days' prior written notice to Buyer.

(b)     In the event either party materially breaches this Agreement and does not cure such breach promptly after receiving written notice thereof from the other party of the breach (and in any event within 10 days after receiving such notice), then such other party may, at its option, terminate the Service affected by such breach by providing written notice of termination to the breaching party, which termination shall be effective immediately.  The dispute of any portion of a Monthly Invoice pursuant to Section 2.2(b) shall not be deemed a material breach of this Agreement.

(c)     Notwithstanding anything to the contrary in Section 5.1, this Agreement shall automatically terminate, with no further action or written acknowledgment required by either Party, upon entry of a final decree closing the Seller's Chapter 11 Case.

(d)     Upon termination or expiration of a Service, Seller shall be obligated to pay accrued but unpaid Fees and reimbursable costs and expenses associated with any Services previously rendered prior to such termination or expiration within thirty (30) days after receipt of the final Monthly Invoice with respect thereto in accordance with Section 2.2.

(e)     Upon the expiration or termination of this Agreement, Buyer shall refund to Seller any unused portion of the Retainer, if any, within thirty (30) days after such expiration or termination of this Agreement.

## ARTICLE VI
## LIMITED WARRANTY

EXCEPT AS OTHERWISE SET FORTH HEREIN, ALL SERVICES WILL BE PROVIDED BY BUYER "AS IS, WHERE IS, WITH ALL FAULTS" AND BUYER MAKES NO (AND HEREBY DISCLAIMS AND NEGATES ANY AND ALL) WARRANTIES OR REPRESENTATIONS OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THOSE RELATING TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, TITLE, PERFORMANCE OR RESULTS.

27086099.2

# ARTICLE VII
# LIMITATION OF LIABILITY

7.1     LIMITATION OF LIABILITY. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, BUYER (INCLUDING ITS AFFILIATES AND SUBCONTRACTORS) SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, SPECIAL, EXEMPLARY, OR PUNITIVE DAMAGES (INCLUDING LOST OR ANTICIPATED REVENUES, LOSS OF PROFITS, LOST OR ANTICIPATED SAVINGS, LOSS OF BUSINESS OPPORTUNITY, OR INJURY TO GOODWILL RELATING TO THE SAME AND ATTORNEYS' FEES) ARISING FROM ANY CLAIM RELATING TO THIS AGREEMENT OR ANY OF THE SERVICES TO BE PROVIDED HEREUNDER OR THE PERFORMANCE OF OR FAILURE TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT, WHETHER SUCH CLAIM IS BASED ON WARRANTY, CONTRACT, TORT (INCLUDING NEGLIGENCE OR STRICT LIABILITY), OR OTHERWISE, AND REGARDLESS OF WHETHER SUCH DAMAGES ARE FORESEEABLE OR AN AUTHORIZED REPRESENTATIVE OF SELLER IS ADVISED OF THE POSSIBILITY OR LIKELIHOOD OF SUCH DAMAGES. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IN THE EVENT THAT SELLER SUFFERS ANY DAMAGE AS A RESULT OF BUYER'S FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT IN ITS PERFORMANCE OF THIS AGREEMENT, BUYER SHALL BE LIABLE FOR SUCH DAMAGES (IT BEING AGREED BY THE PARTIES THAT IN NO EVENT SHALL SELLER BE ENTITLED TO CONSEQUENTIAL, INCIDENTAL, SPECIAL, EXEMPLARY, OR PUNITIVE DAMAGES (INCLUDING LOST OR ANTICIPATED REVENUES, LOSS OF PROFITS, LOST OR ANTICIPATED SAVINGS, LOSS OF BUSINESS OPPORTUNITY, OR INJURY TO GOODWILL RELATING TO THE SAME AND ATTORNEYS' FEES)).

7.2     Exclusive Remedies.  Subject to Section 7.1, Seller's exclusive remedies against Buyer and its Affiliates for any breach of, or other act or omission arising out of or relating to, this Agreement or the performance of, or failure to perform, this Agreement hereunder shall be the right to money damages.

# ARTICLE VIII
# MISCELLANEOUS

8.1     Relationship of the Parties.  Nothing in this Agreement shall be construed so as to make Seller or any Affiliate of a Seller a partner of Buyer or any Affiliate of Buyer.  As a result of entering into this Agreement, no party has the right or authority to enter into any contract, warranty, guarantee, or other undertaking in the name or for the account of another party, or to assume or create any obligation or liability of any kind, express or implied, on behalf of another party or to hold itself out as having any right, power, or authority to create any such obligation or liability on behalf of another party or to bind another party in any manner whatsoever (except as to any actions taken by a party at the express written request and direction of the bound party).

8.2     Amendment of Agreement.  This Agreement may not be supplemented, modified or amended except by a written agreement executed by each Party.

27086099.2     8.3     Notices.  All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if

6

sent by a nationally recognized overnight courier; (c) on the date sent by email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.  Such communications must be sent to the respective Parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 8.3):

    If to Seller:    Alpha Entertainment LLC
c/o Drivetrain, LLC
410 Park Ave, Suite 900
New York, NY  10022
Attention:  John Brecker
Email:  jbrecker@drivetrainllc.com

with a copy (that shall not constitute notice) to:

    Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
United States
Attention:  Matthew B. Lunn
Email:  mlunn@ycst.com

    If to Buyer:    Alpha Opco, LLC
60 Steamboat Road
Suite 105
Greenwich, CT 06830
Attention:  Jeffrey Pollack
Email:  jnp727@xfl.com

with a copy (that shall not constitute notice) to each of:

    Grant, Tani, Barash & Altman, Inc.
9100 Wilshire Boulevard, Suite 1000 West
Beverly Hills, CA 90212
Attention:  Howard Altman
Email:  haltman@gtba.com

and:

Sidley Austin LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Attention:  Matthew Thompson and Vijay Sekhon
Email: mthompson@sidley.com and vsekhon@sidley.com

and:

27086099.2

7

>Fried, Frank, Harris, Shriver & Jacobson LLP
>One New York Plaza
>New York, NY 10004
>Attention:  Mark Lucas
>Email: mark.lucas@friedfrank.com

8.4     Fees and Expenses.  The Parties agree that, except as otherwise expressly provided in this Agreement, each Party shall bear and pay all costs, fees, and expenses that it incurs, or that may be incurred on its behalf, in connection with this Agreement.

8.5     Governing Law; Jurisdiction; Service of Process; WAIVER OF RIGHT TO TRIAL BY JURY.  This Agreement shall be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and, where state law is implicated, the internal laws of the State of Delaware, without giving effect to any principles of conflicts of law.  Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Parties agree that if any dispute arises out of or in connection with this Agreement, the Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all disputes relating to the Agreement.  Such court shall have sole jurisdiction over such matters and the parties affected thereby and each Party each hereby consents and submits to such jurisdiction.  The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection that they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.  In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint, and other pleadings required to commence such action, suit, or proceeding upon the Party at the address of such Party set forth in Section 8.3, unless another address has been designated by such Party in a notice given to the other Parties in accordance with the provisions of Section 8.3.  EACH PARTY HEREBY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

8.6     Entire Agreement.  This Agreement constitutes the full and entire agreement between the Parties hereto pertaining to the provision of Services and supersedes all prior written agreements, understandings, negotiations, and discussions, whether oral or written, with respect thereto made by any Party.

8.7     Waiver.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision (whether or not similar) nor shall any waiver constitute a continuing waiver unless otherwise expressed or provided.  All waivers hereunder must be in writing to be effective.

8.8     Assignment.  Seller may not assign or otherwise transfer either or both its rights and obligations hereunder (or agree to do so) without the prior written consent of Buyer.  Any assignment or other transfer not permitted under this Section 8.8 shall be null and void ab initio.

27086099.2

8.9 <u>Successors and Assigns</u>. This Agreement shall bind and inure to the benefit of the Parties hereto and their respective successors and permitted assigns.

8.10 <u>No Third Party Beneficiaries</u>. Nothing in this Agreement is intended to, or shall, confer any third party beneficiary or other rights or remedies upon any Person other than the Parties hereto.

8.11 <u>Force Majeure</u>. Buyer shall not be liable for any expense, loss or damage whatsoever arising out of any interruption of service or delay or failure to perform under this Agreement caused by Force Majeure. For purposes of this Agreement, "<u>Force Majeure</u>" means any circumstance or event beyond the reasonable control of Buyer relying upon such event or circumstance, including: acts of God, acts of a public enemy, acts of terrorism, acts of a nation or any state, territory, province, or other political division thereof, changes in applicable Law, fires, floods, pandemics, or epidemics (excluding the COVID-19 pandemic in effect as of the date hereof), riots, shelter in place orders, quarantine restrictions, freight embargoes, or other similar causes. In any such event, Buyer's obligations hereunder shall be postponed for such time as its performance is suspended or delayed on account thereof. If Buyer or any subcontractor is so affected, Buyer will notify Seller in writing upon learning of the occurrence of such event of Force Majeure. Upon the cessation of the Force Majeure event, Buyer will use commercially reasonable efforts to resume, or to cause the relevant subcontractor, to resume, its performance with the least practicable delay.

8.12 <u>Severability of Provisions</u>. Any provision of this Agreement which is determined by a court of competent jurisdiction to be invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Agreement or affecting the validity or enforceability of any of the provisions of this Agreement in any other jurisdiction, and if any provision of this Agreement is determined to be so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable, provided in all cases that neither the economic nor legal substance of this Agreement is affected by the operation of this sentence in any manner materially adverse to any party. Upon any such determination that any provision of this Agreement is invalid or unenforceable, the Parties shall negotiate in good faith in an effort to agree upon a suitable and equitable substitute provision to effect the original intent of the Parties.

8.13 <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original hereof, and all of which shall constitute a single agreement effective as of the Effective Date. Any delivery of an executed counterpart of this Agreement by electronic mail shall be as effective as delivery of a manually executed counterpart of this Agreement.

*Remainder of page left intentionally blank*

27086099.2

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

**SELLER:**

**ALPHA ENTERTAINMENT LLC**


By: _____
Name: John Brecker
Title: Manager


**BUYER:**

**ALPHA OPCO, LLC**


By: _____
Name: Howard Altman
Title: Secretary

27086099.2

[Signature Page to Transition Services Agreement]

**Exhibit A**
**Services**

| Service | Description of Service |
|---|---|
| Payroll Services | Assistance with certain employee-related matters, including the completion of W-2 and Affordable Care Act forms, 401(k) audit, and responses to inquiries or requests from government agencies and former employees. |
| Treasury Services | Assistance with the maintenance and closure, as appropriate, of the Debtor's bank accounts, and oversight and coordination of outgoing payments in conjunction with WWE treasury services personnel. |
| Tax & Regulatory Compliance | Assistance with tax and regulatory requirements, including the filing of 2019 /2020 income tax returns and sales and use tax filings. |
| General Accounting & Reporting | Assistance with the Debtor's general accounting function and preparation of various reports, including month-end financials, balance sheets, profit and loss statements, and cash flow statements. |
| Accounts Payable Processing | Coordinating and managing accounts payable, including through the Procure-to-Pay system. |
| Chapter 11 Case Reporting Requirements | Assistance with the Debtor's chapter 11 reporting requirements, including the preparation of monthly operating reports and any amendments to the Debtor's schedules of assets and liabilities and statements of financial affairs. |
| Chapter 11 Claims Reconciliation | Assistance with the review, reconciliation, and, as needed, preparation of objections to proofs of claim filed in the Debtor's chapter 11 case, as well as any necessary further review of claims listed in the Debtor's schedules of assets and liabilities. |
| General Chapter 11 Case Assistance | Assistance with completion of other chapter 11-related tasks, including, for example, preparation of pleadings and responding to inquiries from creditors. |

**Exhibit B**
**Fees**

| Seller Personnel | Hourly Rate |
|---|---|
| Jeffrey Pollack[1] | $750 |
| Chirag Mithani | $150 |

---

27086099.4

[1] The Parties agree that all reasonable efforts will be made to limit the services to be provided by Mr. Pollack under this Agreement and where possible services will be provided by Mr. Mithani.