**EXHIBIT 3**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
:
In re                                : Chapter 11
                                     :
ALPHA ENTERTAINMENT LLC,             : Case No. 20-10940 (LSS)
                                     :
　　　Debtor.¹                        : Ref. Docket Nos. 55, 181, 358 & 438
---------------------------------------------------------x

### ORDER APPROVING THE ASSUMPTION AND ASSIGNMENT OF A CERTAIN EXECUTORY CONTRACT AND GRANTING RELATED RELIEF

Pursuant to that certain *Order (I) Approving and Authorizing the Sale of Certain of the Debtor's Assets Free and Clear of All Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 358] (the "**Sale Order**"); and upon consideration of the certification of counsel submitted by the Debtor in connection herewith [Docket No. 438] (the "**Certification of Counsel**");² and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the relief requested by the Debtor in the Certification of Counsel having been given under the particular circumstances, and it appearing that no other or further notice need be provided; and Alpha Opco, LLC (the "**Buyer**") having requested that the Debtor assume and assign to the Buyer, pursuant to the Sale Order and the APA, that certain Consulting and Support Services Agreement, dated April 3, 2018, by and between the

---

¹ The last four digits of the Debtor's federal tax identification number, is 7778. The Debtor's mailing address is 1266 East Main St., Stamford, CT 06902.

² Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Certification of Counsel.

27032182.2

Debtor and World Wrestling Entertainment, LLC ("**WWE**") and such agreement, (the "***Services Agreement***"), as amended and restated pursuant to that certain Amended and Restated Consulting and Support Services Agreement between the Debtor and WWE (the "***Assigned Contract***"), a copy of which is attached hereto as <u>Exhibit 1</u>; and WWE and the Buyer having consented to the entry of this Order and the relief granted herein; and upon the representations of the Debtor in the Certification of Counsel; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Debtor is hereby authorized to enter into the Amended and Restated Services Agreement, in substantially the form attached hereto as <u>Exhibit 1</u>, and to take any and all actions necessary and appropriate in connection therewith.

2. In accordance with the terms of the Sale Order, the assumption and assignment of the Assigned Contract is hereby approved, as set forth herein, and the Debtor is authorized to assume and assign the Assigned Contract to the Buyer pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code.

3. The cure amount (the "***Cure Amount***") required to be paid under section 365(b) of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contract shall be $25,000.  Unless the Buyer and WWE agree to different terms, the Buyer shall pay to WWE, as applicable, the Cure Amount within ten (10) business days of the entry of this Order. WWE shall be forever barred from asserting any additional Cure Amount or other claims arising prior to the date hereof with respect to such Assigned Contract, and the payment of such Cure Amount shall effect a cure of all defaults and shall compensate for any actual pecuniary loss to WWE from any such defaults.

27032182.2

4. The Buyer has provided adequate assurance of its future performance under the Assigned Contract within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

5. Except to the extent expressly set forth herein, nothing in this Order is intended to amend, supersede, or modify the Sale Order or the APA. The Assigned Contract shall be an "Assigned Contract" for all purposes under the Sale Order, and except as expressly modified herein, all provisions of the Sale Order and the APA relating to Assigned Contract shall be applicable to the Assigned Contract.

6. Effective as of the Effective Date, (i) the Buyer shall be, and hereby is, deemed to be substituted for the Debtor as a party to the Assigned Contract, and (ii) the Debtor and its bankruptcy estate shall be, and hereby are, relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contract.

7. The Debtor is authorized to take all actions and execute all documents necessary or appropriate to effectuate the assumption and assignment of the Assigned Contract to the Buyer consistent with this Order, the Sale Order, and the APA.

8. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry and not subject to any stay.

9. This Court shall retain exclusive jurisdiction and power over any and all matters arising from or related to this Order.

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

27032182.2    **Dated: October 5th, 2020**
**Wilmington, Delaware**

# EXHIBIT 1

## Amended and Restated Services Agreement

27032182.2

# AMENDED AND RESTATED CONSULTING AND SUPPORT SERVICES AGREEMENT

**THIS AMENDED AND RESTATED CONSULTING AND SUPPORT SERVICES AGREEMENT** (this "Agreement") is entered into as of [•], 2020 (the "Effective Date") by and between ALPHA ENTERTAINMENT, LLC, a Delaware limited liability company ("ALPHA"), and WORLD WRESTLING ENTERTAINMENT, INC., a Delaware corporation ("WWE").

## WITNESSETH:

**WHEREAS**, ALPHA and WWE previously entered into that certain Consulting and Support Services Agreement dated as of April 3, 2018 (the "Current Agreement").

**WHEREAS**, ALPHA commenced a voluntary case for reorganization under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 13, 2020 (the "Bankruptcy Case").

**WHEREAS**, pursuant to that certain Asset Purchase Agreement, dated as of August 17, 2020 (as amended, restated, modified or supplemented from time to time, the "Asset Purchase Agreement"), Alpha Opco, LLC ("Alpha Opco") acquired substantially all of the assets of ALPHA, including all of ALPHA's rights under the Current Agreement, pursuant to sections 105, 363, and 365 of the Bankruptcy Code (the "Acquisition"). Capitalized terms used but not defined herein shall have the meaning set forth in the Asset Purchase Agreement.

**WHEREAS**, at a sale hearing on August 7, 2020, the Bankruptcy Court entered an order [Docket No. 358] (the "Sale Order") approving the Acquisition.

**WHEREAS**, ALPHA seeks to assume and assign certain executory contracts, including the Current Agreement, to Alpha Opco, in accordance with the Asset Purchase Agreement, the approved bidding procedures in connection with the sale of ALPHA's assets, and the Sale Order.

**WHEREAS**, the cure amount (the "Cure Cost") required to be paid to WWE under the terms of the Current Agreement in order to assume the Current Agreement is $203,424.65.

**WHEREAS**, pursuant to Section 2.5 of the Asset Purchase Agreement, Alpha Opco designated the Current Agreement as a Designation Right Asset and as a result Alpha Opco has the right to treat the Current Agreement as a Purchased Asset or an Excluded Asset at any time during the Designation Rights Period upon written notice to ALPHA.

**WHEREAS**, ALPHA and Alpha Opco believe that WWE's ongoing provision of services for a period of at least six months from the Effective Date will provide significant value, and Alpha Opco seeks to treat this Agreement as a Purchased Asset provided that WWE will agree to the amendment of certain terms of the Current Agreement and WWE's agreement that the Cure Cost in respect of this Agreement will be $25,000; and WWE has agreed to such terms.

**WHEREAS**, the parties desire to enter into this Agreement in order to amend and restate the Current Agreement on terms that are satisfactory to Alpha Opco, subject to the assumption of

this Agreement by ALPHA and the assignment thereof to Alpha Opco in accordance with the terms of the Asset Purchase Agreement and the Sale Order.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

### ARTICLE I. EFFECTIVENESS; CURE COST

**SECTION 1.1.     Effectiveness.**

This Agreement shall become effective and binding upon the parties hereto immediately prior to the assumption of this Agreement by ALPHA and the assignment thereof to Alpha Opco in accordance with the terms of the Purchase Agreement and the Sale Order.

**SECTION 1.2.     Cure Cost.**

As a condition to the assumption and assignment of this Agreement to Alpha Opco in connection with the Acquisition, WWE hereby agrees that the Cure Cost in respect of this Agreement shall be $25,000, which shall be paid by Alpha Opco as provided in the Purchase Agreement and the Sale Order within ten business days of the Effective Date.  Except as expressly provided herein, WWE agrees that Alpha Opco shall not be responsible for any other Cure Costs, and all such Cure Costs are waived by WWE.  Alpha Opco shall not be required to provide any further adequate assurances of future performance to WWE in connection with the assumption and assignment of this Agreement to Alpha Opco.

### ARTICLE II. SERVICES AND COMPENSATION

**SECTION 2.1.     Provision of Services.**

WWE shall provide (or cause to be provided) to ALPHA each of the services set forth in Exhibit A (the "Transition Services") and Exhibit B (the "Specified Services" and, together with the Transition Services, the "Services") until the earlier of the following to occur, with respect to each such Service, (i) expiration or earlier termination of the Term (as defined below) and (ii) the date on which such Service or this Agreement shall have been terminated in accordance with Section 3.2.  If ALPHA requests that WWE provide a Service following the expiration of the Term, the parties shall negotiate in good faith to determine mutually acceptable terms and conditions upon which such Service would be provided following the expiration of the Term, but WWE shall have no obligation to provide such Service. WWE shall provide separate bi-weekly reports to ALPHA with respect to (x) the Transition Services and (y) the Specified Services, in each case listing the Services that WWE has provided to ALPHA during the prior two weeks and, where applicable, the number of hours worked in connection with the performance of such Services.

**SECTION 2.2.     Fees For Services.**

The fees for the Services set forth in Exhibit A will be calculated by WWE to compensate it for the allocable "fully loaded" costs of employees' and executives' time (excluding cash and equity bonus compensation) plus an agreed applicable margin of fifteen percent (15%).  In addition,

2

ALPHA shall directly pay (rather than WWE paying and being reimbursed for) any reasonable, documented out-of-pocket expenses relating to the Services.  If WWE inadvertently or otherwise pays any such costs, ALPHA shall immediately reimburse WWE upon its receipt of an invoice therefor.

**SECTION 2.3.**     **Payment by ALPHA.**

WWE shall submit itemized accountings and separate invoices to ALPHA with respect to the Transition Services and the Specified Services setting forth all amounts due to WWE on a bi-weekly basis.  ALPHA shall pay all non-disputed amount(s) invoiced by WWE within thirty (30) days following ALPHA's receipt of the same; provided, that ALPHA may, acting reasonably and in good faith, dispute any amount(s) included in an invoice in accordance with the last sentence of this Section 2.3.  All payments required to be made pursuant to this Agreement which are not disputed in good faith and are not paid when due and owing shall bear interest at an annualized rate of eighteen percent (18%).  In the event that ALPHA disputes any amount included in an invoice from WWE, ALPHA shall promptly provide written notice thereof to WWE (in a manner to reasonably identify and detail the specific amount(s) in dispute) and the parties shall consult in good faith to promptly resolve such dispute; any amounts so disputed and subsequently resolved shall be promptly paid by ALPHA, without any interest thereon, following the resolution of such dispute or, upon the mutual agreement of the parties, included in the next monthly invoice submitted by WWE.

**ARTICLE III.     TERM AND TERMINATION**

**SECTION 3.1.**     **Term.**

The term of this Agreement shall commence on the Effective Date and shall terminate upon the earlier of the six (6)-month anniversary of the Effective Date or the termination of this Agreement pursuant to Section 3.2 (the "Term").

**SECTION 3.2.**     **Termination.**

ALPHA may, in its sole and absolute discretion, terminate one or more Services specified on Exhibit A prior to the expiration of the Term upon ten (10) days prior written notice to WWE, which notice shall specify the Service(s) to be terminated and the date of termination. Notwithstanding the foregoing sentence, ALPHA may not terminate the Specified Services prior to the expiration of the Term without WWE's written consent unless and to the extent Alpha Entertainment, LLC has dissolved or consummates a plan of liquidation, or the Bankruptcy Case is dismissed or is converted under Chapter 7 of the Bankruptcy Code.  This Agreement may be terminated with immediate effect as follows:  (a) at any time upon the mutual written agreement of the parties, which agreement must state the effective date of termination; (b) by ALPHA upon thirty (30) days prior written notice to WWE; or (c) by either party when the non-terminating party is in material breach of any of its obligations under this Agreement and has failed to remedy such breach within thirty (30) days (or, in the case of a payment default, within ten (10) days), after receipt of written notice thereof from the non-breaching party.  Following the expiration or termination of any Service, ALPHA shall not be liable for any additional fees for such Service provided, however, that WWE shall, and shall cause its applicable affiliates to, cooperate

reasonably with ALPHA (upon ALPHA's reasonable request) to enable ALPHA to transition the provision of the Services to ALPHA's internal business operations or make alternative arrangements for the provision of services substantially consistent with the Services that expired or were terminated, and ALPHA shall be responsible to compensate WWE for such transition services on the same terms and conditions as set forth above.  Unless this Agreement has been terminated by ALPHA for WWE's material breach pursuant to clause (c) of this Section 3.2, ALPHA agrees to pay WWE compensation due for Services actually rendered as of the effective date of any termination of this Agreement or any Service specified on Exhibit A, and for such transition services requested by ALPHA beyond the termination date of such Services, and such amounts shall be in full satisfaction of any obligation or liability of ALPHA to WWE for payments due to WWE with respect to any Services so terminated.

## ARTICLE IV.    RELATIONSHIP OF THE PARTIES

**SECTION 4.1.    No Transfer of Assets.**

WWE has not granted, licensed or assigned in any manner to ALPHA any of WWE's intellectual property such as, without limitation, its copyrights (including without limitation, television programming), logos, trademarks, tradenames, etc., except as provided in that certain Contribution Agreement, dated April 3, 2018, between WWE and ALPHA.  Subject to Section 4.5, all procedures, methods, systems, strategies, tools, equipment, facilities and other resources or intellectual property of any nature owned by WWE or any of its affiliates in connection with the provision of Services hereunder which are the property of WWE or its affiliates will remain the property of WWE and its affiliates and will at all times be under the sole direction and control of WWE and its affiliates.  The disclosure or sharing of Confidential Information or Trade Secrets by either party in the performance of this Agreement shall not be deemed to effect a transfer of any rights in or to such Confidential Information or Trade Secrets.

**SECTION 4.2.    Scope of Services.**

WWE undertakes to provide the Services hereunder with the same degree of care and diligence, and using the same procedures and policies, it uses in providing such services for its own operations.  WWE shall endeavor to assign sufficient resources and qualified personnel to provide the Services; provided, that WWE shall not be obligated to provide Services hereunder if and to the extent that WWE determines that the provision of such Services reasonably could be expected to interfere with the ordinary course business operations of WWE; provided, further, that in the event WWE so determines to suspend, in whole or in part, provision of any Service pursuant to the immediately preceding sentence, WWE shall provide ALPHA with written notice thereof and the parties shall reasonably cooperate and discuss in good faith the implementation of suitable alternative arrangements.  WWE may, upon written notice to ALPHA, delay the provision of the Services or reduce the level of the Services if it determines that providing the Services as contemplated hereunder reasonably could be expected to interfere with the ordinary course business operations of WWE.

**SECTION 4.3.    Indemnification; Limitations on Liability.**

a)     ALPHA shall indemnify and hold WWE and its directors, officers, employees, affiliates, agents and representatives (collectively, "Indemnified Parties") harmless from any and all claims (including third party claims, whether or not WWE or any such persons are named in such third party claim), liabilities, judgments, losses, costs, damages and expenses (including reasonable attorneys' fees and costs of investigation) (collectively, "Costs") arising from any threatened or pending investigation, lawsuit, action, claim, proceeding, or dispute, which arises as a result of the performance or non-performance of the Services (each, a "Claim"); provided, that ALPHA, its employees and agents shall not be responsible for any Costs to the extent they arise solely from the gross negligence or willful misconduct of WWE hereunder.

b)     WWE will promptly notify ALPHA once it learns of any Claim. Should any Claim be formally instituted against an Indemnified Party, ALPHA shall have the right to participate therein with counsel chosen by it and, to the extent that it may wish, to assume the defense of the Claim, with counsel reasonably satisfactory to WWE. Even if ALPHA assumes the defense of a Claim, the Indemnified Parties will have the right to participate in such Claim and to retain their own counsel at their own cost and expense. However, ALPHA will be required to pay all reasonable and documented fees and expenses of such counsel as they are incurred if: (i) WWE or such Indemnified Party has been advised by such counsel that there may be legal defenses available which are in conflict with or are materially different from or additional to defenses to ALPHA, (ii) ALPHA shall not have assumed the defense of the Claim and employed counsel reasonably satisfactory to the Indemnified Parties in a timely manner or (iii) ALPHA shall have authorized the employment of such counsel in connection with the defense of the Claim.

c)     If any indemnification sought by the Indemnified Parties pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason or insufficient to hold the Indemnified Parties harmless, then ALPHA will contribute to the Costs for which such indemnification is held unavailable or insufficient in such proportion as is appropriate to reflect the relative benefits to ALPHA, as compared to the relative benefits to WWE, or if such allocation is not permitted by applicable law, then in such proportion as is appropriate to reflect not only the relative benefits, but also the relative fault of ALPHA as compared to WWE.

d)     The indemnification provisions of this Section 4.3 shall: (i) remain operative and in full force and effect regardless of the termination of this Agreement; (ii) inure to the benefit of the successors, assigns, heirs, or personal representative of any Indemnified Party; (iii) be in addition to any other rights the Indemnified Parties may have at common law or otherwise; and (iv) apply to activities in connection herewith prior to this date and after any amendment, modification or future addition to the Agreement.

e)     The Indemnified Parties shall not have any liability hereunder except to the extent arising directly from the gross negligence or willful misconduct of such persons, as

5

    determined by a court of competent jurisdiction.  In no event shall WWE be liable for any loss of profits or anticipated revenues, loss of business, cost of capital, loss of use or of data, loss of goodwill, loss of opportunity, interruption of business, or for indirect, special, punitive, exemplary, incidental, consequential or indirect damages of any kind, whether under this Agreement or otherwise.

  f)  EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE SERVICES ARE PROVIDED ON AN "AS IS" BASIS, AND WWE DOES NOT MAKE ANY REPRESENTATION OR WARRANTY AS TO THE NEED, ADEQUACY OR RESULTS OF ANY SERVICES PROVIDED HEREUNDER AND HEREBY DISCLAIMS (ON ITS OWN BEHALF AND ON BEHALF OF ITS AFFILIATES AND THEIR RESPECTIVE REPRESENTATIVES) ALL REPRESENTATIONS AND WARRANTIES, WHETHER EXPRESS, IMPLIED OR STATUTORY, WITH RESPECT TO ITS PERFORMANCE UNDER THIS AGREEMENT, INCLUDING ANY WARRANTY OF ADEQUACY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, WWE'S SOLE AND EXCLUSIVE RESPONSIBILITY TO ALPHA AND ITS SUBSIDIARIES (IF ANY), AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, FOR ERRORS OR OMISSIONS IN THE SERVICES SHALL BE TO FURNISH CORRECT INFORMATION OR RE-PERFORM THE RELEVANT SERVICES.

**SECTION 4.4.**  **Independent Contractor.**

WWE shall at all times be, and be deemed to be; an independent contractor and nothing contained herein shall make WWE an employee, agent or partner of ALPHA in any manner whatsoever and neither party will act or represent or hold itself out as having authority to act as an agent or partner of the other party.  Accordingly, ALPHA shall not have any right or obligation to withhold any monies for any taxes, insurance, social security payments or other contributions or payments for the benefit of WWE, or to provide WWE any workers' compensation, disability or other similar insurance coverages.  Neither party has any authority to bind the other party to any contract, agreement or other legally binding documents.

**SECTION 4.5.**  **Intellectual Property.**

WWE acknowledges that any and all rights, products or materials derived from any of ALPHA's intellectual property and/or the Services rendered by WWE hereunder (the "<u>Work</u>"), shall constitute a "work made for hire" under the copyright laws of the United States or any other applicable law and ALPHA shall own any and all right, title and interest derived from the results and proceeds of the Work, in perpetuity, including without limitation, any copyright, trademark and patent resulting therefrom, any marketing and/or promotional rights.  If, under any applicable law, the fact that "work made for hire" is not effective to place full authorship and ownership in ALPHA, then to the fullest extent allowable and for the full term of protection otherwise accorded to ALPHA under such applicable law, WWE hereby irrevocably and exclusively grants and assigns to ALPHA and its successors and assigns throughout the universe, in perpetuity, all right, title and interest of every kind or nature in and to the Work.  WWE hereby assigns and transfers

to ALPHA all of the foregoing, without reservation, condition or limitation and no right of any kind, nature or description is reserved by WWE.

**SECTION 4.6.          Confidentiality.**

During the course of the provision of Services hereunder, each party may have access to Confidential Information. "Confidential Information" as used herein shall mean the terms of this Agreement and any and all data and information relating to the business of the other party and/or their respective parents, affiliated or subsidiary operations or relating to their directors or officers which is disclosed or becomes known as a consequence of or through the relationship contemplated hereby and which is not generally known in the public or by a party's competitors. Included in the foregoing by way of example only and not limitation, are such items as financial statements, reports, business plans, sales and other like information and/or ideas regarding contractual relationships and/or the terms thereof. Neither party hereto shall disclose to any person or entity any Confidential Information at any point during the term hereof or at any time thereafter. Additionally, the parties agree that each party's respective trade secrets ("Trade Secrets") are absolutely protected as a matter of law and that no disclosure of them will be made at any time. Trade Secrets are understood to be any plan, process, tool or mechanism known only to a party and to those employees and agents of a party to whom it must be confided in order to apply it to the uses intended. Notwithstanding the foregoing, a party's obligation of confidentiality shall not include information which (i) at the time of disclosure was in the public domain; (ii) after such disclosure, becomes generally available to the public other than through any act or omission by a disclosing party; and (iii) is required to be disclosed by a party any court of competent jurisdiction or applicable law, rule or regulation, provided that, where practicable, prior written notice of such disclosure is furnished to the non-disclosing party in a timely manner in order to afford the non-disclosing party an opportunity to seek a protective order against such disclosure.

**SECTION 4.7.          Employees.**

Without the advance written consent of WWE, no WWE employee, officer or director shall be paid compensation by ALPHA in respect of the Services.

## ARTICLE V. MISCELLANEOUS PROVISIONS

**SECTION 5.1.          Notices.**

Any and all notices, elections, offers, acceptances and demands permitted or required to be made under this Agreement shall be in writing, signed by the person giving such notice, election, offer, acceptance or demand and shall be delivered personally, by facsimile, or sent by a US postal service or recognized international courier (such as DHL or Federal Express) or by registered or certified mail, to the party at its facsimile number or address on file with the other party or at such other facsimile number or address as may be supplied in writing. The date of delivery shall be the date of such notice, election, offer, acceptance or demand.

**SECTION 5.2.**     **Force Majeure.**

If the performance of any part of this Agreement by either party or of any obligation under this Agreement, is prevented, restricted, interfered with, or delayed by reason of any cause beyond the reasonable control of the party liable to perform, the party so affected shall, on giving written notice to the other party, be excused from such performance to the extent of such prevention, restriction, interference or delay and for so long as such prevention, restriction, interference or delay renders the provision of any Service impossible; provided that the affected party shall provide prompt written notice of such impediment to the non-affected party and shall use its best efforts to avoid or remove such causes of nonperformance and shall continue performance with the utmost dispatch whenever such causes are removed.  When such circumstances arise, the parties shall discuss what, if any, modifications of the terms of this Agreement may be required in order to arrive at an equitable solution.

**SECTION 5.3.**     **Successors and Assigns.**

This Agreement shall be binding on and shall inure to the benefit of the parties and their respective successors and permitted assigns.  Neither party may assign its rights nor delegate its obligations hereunder without the prior written consent of the other party; provided, however, that ALPHA intends to assign this Agreement to Alpha Opco, and WWE consents to such assignment on the terms and conditions set forth herein.

**SECTION 5.4.**     **Amendment.**

No change, modification or amendment of this Agreement shall be valid or binding on the parties unless such change or modification shall be in writing signed by the party or parties against whom the same is sought to be enforced.

**SECTION 5.5.**     **No Waiver.**

The failure of any party to insist on strict performance of a covenant hereunder or of any obligation hereunder shall not be a waiver of such party's right to demand strict compliance therewith in the future, nor shall the same be construed as a novation of this Agreement.

**SECTION 5.6.**     **Captions.**

Titles or captions of articles and paragraphs contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or the intent of any provision hereof.

**SECTION 5.7.**     **Counterparts.**

This Agreement may be executed in multiple copies, each of which shall for all purposes constitute an Agreement, binding on the parties.

**SECTION 5.8.** **Applicable Law; Venue.**

This Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut.  Any claim, dispute, or other matter in question arising out of or relating in any way to this Agreement or the performance thereunder (including, without limitation, any claims in law or equity whether based on torts, contracts or otherwise) shall be resolved in accordance with Exhibit ADR attached hereto.  The provisions contained in this Section 5.8 shall survive the termination and/or expiration of this Agreement.

**SECTION 5.9.** **Severability.**

In the event any provision or the application thereof in any circumstances, is held to be invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of the remainder hereof, or of the application of any such provision in any other circumstances.

**SECTION 5.10.** **No Other Duties.**

The only duties and obligations of the parties under this Agreement are as specifically set forth in this Agreement, and no other duties or obligations shall be implied in fact, law or equity, or under any principle of fiduciary obligation.

**SECTION 5.11.** **No Third-Party Beneficiaries.**

With the exception of the parties to this Agreement and the Indemnified Parties, there shall exist no right of any person to claim a beneficial interest in this Agreement or any rights occurring by virtue of this Agreement.

**SECTION 5.12.** **Incorporation of Exhibits.**

The Exhibits identified in this Agreement are incorporated herein by reference and made a part hereof as if set out in full in this Agreement.  In the event of a conflict between any term of this Agreement and information contained in the Exhibits to this Agreement, the terms included in this Agreement shall govern.

*[Signature page follows]*

**IN WITNESS WHEREOF**, the parties have entered into this Agreement as of the Effective Date.

| **WORLD WRESTLING ENTERTAINMENT, INC.** | **ALPHA ENTERTAINMENT, LLC** |
|---|---|
| By: _____ <br> Its Authorized Representative <br> Name:  Mark Kowal <br> Title:  Corporate Controller <br> Date: _____ | By: _____ <br> Its Authorized Representative <br> Name: _____ <br> Title: _____ <br> Date: _____ |

# EXHIBIT A

# TRANSITION SERVICES

| Functionality | Service to be Rendered by WWE |
|---|---|
| Avid Content Management System | WWE will co-locate Alpha Opco's Content Management System within its data center during the Term. WWE will coordinate removal of hardware and files with Alpha and provide guidance as requested. |
| XFL Shop (merchandise) | Assist with transition of sites and agreements to Alpha Opco control. Provide assistance managing sites, inventory and fulfillment. |
| IP / Trademarks Management | Transition intellectual property from ALPHA to Alpha Opco. |
| WWE Storage | Movement of XFL assets from WWE warehouse; provide storage until new location is available. |
| Payroll | Dependent on payroll system (ADP) / HR capital management system (Workday); need to download and store all historical information. |
| Facilities Management | Provide assistance as required to remove Alpha Opco assets from WWE Storage and/or leased facilities. |
| Accounts Receivable | Customer information download and transition from ALPHA to new entity. |
| Treasury | Cash management, including PayPal transfer support. |
| Accounting / Accounts Payable | Financial data / historicals; all payable information needed. |
| Taxes | Support Alpha Opco resources with tax registration process in various jurisdictions; work with Alpha Opco to establish appropriate tax processes/procedures (dependent on assets acquisition and responsibility of new entity). |
| URL ownership | All URLs under WWE umbrella account; assist with transition to Alpha Opco. |
| Logistics/Mailroom | Oversee mail/package logistics at 1266 East Main Street as needed, including forwarding services and providing packaging materials as needed. |
| Travel | Support ad hoc travel requests until Alpha Opco establishes appropriate travel accounts/protocols. |

| Functionality | Service to be Rendered by WWE |
|---|---|
| Security | Coordinate required security (moving, office shutdowns, alarms, etc.). |
| Workday (HRIS System) | Develop a secured site to download all historical data, need to determine what is needed out of the system.  Assist with 1094/1095 process as needed. |

# EXHIBIT B

# SPECIFIED SERVICES

| Functionality | Service to be Rendered by WWE |
|---|---|
| Payroll Services | Assistance with certain employee-related matters, including the completion of W-2 and Affordable Care Act forms, 401(k) audit, and responses to inquiries or requests from government agencies and former employees; close payroll related tax IDs with various state agencies. |
| Treasury Services | Assistance with the maintenance and closure, as appropriate, of the Debtor's bank accounts, and oversight and coordination of outgoing payments in conjunction with WWE treasury services personnel. |
| Tax & Regulatory Compliance | Assistance with tax and regulatory requirements, including the filing of 2019/2020 income tax returns, sales and use tax filings and the shutdown/deregistration of Alpha tax IDs. |
| General Accounting & Reporting | Assistance with the Debtor's general accounting function and preparation of various reports, including month-end financials, balance sheets, profit and loss statements, and cash flow statements. |
| Accounts Payable Processing | Coordinating and managing accounts payable, including through the Procure-to-Pay system. |

**EXHIBIT ADR**

Arbitration

In exchange for the benefits of the speedy, economical and impartial dispute resolution of arbitration, except as expressly provided in this Exhibit ADR, the Parties, with the advice and consent of their selected counsel, choose to waive their right to resolution of their disputes in a court of law by judge or jury, and instead elect to treat their disputes, if any, pursuant to the JAMS' Comprehensive Arbitration Rules and Procedures, in accordance with the Expedited Procedures in those rules, and in accordance with this Exhibit ADR.

1. Arbitration.

(a) Subject to Section 2 of this Exhibit ADR, the Parties agree that any controversy, dispute or claim between or involving the Parties or arising out of or relating to this Agreement will be settled by a confidential, final and binding arbitration in New York, NY administered by the New York office of JAMS, in accordance with the JAMS Comprehensive Arbitration Rules and Procedures (the "Comprehensive Arbitration Rules") in effect at the time the arbitration is commenced. The Parties further agree that any controversy, dispute or claim about the enforceability of this Exhibit ADR or whether a controversy, dispute or claim is subject to this Exhibit ADR shall be resolved by arbitration.  The obligation to arbitrate survives this Agreement.

(b) The Parties desire and agree that any arbitration proceedings shall be conducted before one arbitrator to be selected pursuant to the Comprehensive Arbitration Rules (the "Arbitrator") as expeditiously as possible and acknowledge that expeditious arbitration is in the interest of the Parties.  The Parties agree that the arbitration must be concluded, including the rendering of any award by the Arbitrator (the "Award"), not more than ninety (90) days following selection of the Arbitrator. The Parties further agree that the Arbitrator shall have the authority to impose any interim deadlines, including shortening any deadlines provided in the Comprehensive Arbitration Rules, to ensure that this ninety (90))-day deadline is met. The Arbitrator must agree to the foregoing ninety (90) day deadline before accepting appointment. Failure to meet the ninety (90) day deadline, however, will not render the Award invalid, unenforceable or subject to being vacated. However, the Parties may mutually agree to modify the ninety (90))-day deadline and, if they do so, the Arbitrator shall accommodate the Parties' mutual agreement. The Arbitrator shall have no power to alter or disregard any express language in the Agreement and may not reform the Agreement under equitable or other principles. The Parties will be responsible for their own legal fees, costs and expenses incurred during or in connection with the arbitration.

(c) The Parties shall maintain the confidential nature of the arbitration proceeding, except as may be necessary in connection with a court application for a provisional or preliminary remedy, a court action to challenge or enforce the Award, or as otherwise required by law or judicial decision. The Parties further agree that the Arbitrator shall render the Award in writing and explain the decision which, to the extent possible, shall not include confidential information.

(d)     The Parties waive to the fullest extent permitted by law any rights to appeal or to review of the Award by any court or tribunal.

(e)     For the avoidance of doubt, in the event of a conflict between this <u>Exhibit ADR</u> and the Comprehensive Arbitration Rules, this <u>Exhibit ADR</u> controls.